De Florez and another *v.* Raynolds and others.

(*Circuit Court, S. D. New York.* February 2, 1880.)

1. Re-Issue No. 1,804—Metal Preserving Cans—Limitation.

Re-issued letters patent No. 1,804, granted to Moritz Pinner, November 1, 1864, for metal cans, cases, boxes, etc., for preserving food, paints, oils, etc., *held* valid, for the purposes of injunction, for the term of 17 years from November 27, 1862, the date when the same invention was patented in France.

2. Motion to Open a Decree—Supplemental Answer—Prior French Patent for Same Invention—Duration—Novelty.

Upon a motion to open a decree and amend answer setting up the prior issue of a French patent for the same invention, *held*, that such patent could be admitted only as affecting the question of the duration of the United States patent, and not upon the question of novelty.

3. "Perpetual Injunction" Construed.

The words "perpetual injunction," in a decree, mean only for the life of the patent, which must be determined by the statute and all the facts of the case, and not merely by the terms of the grant in the patent.

4. Interlocutory Decree—Amendment.

An interlocutory decree is always open to amendment and correction.

5. Section 16, Act March 2, 1861, Construed—Prior Foreign Patent to Same Inventor for Same Invention—Limitation of United States Patent.

Section 16 of the act of March 2, 1861, providing that all patents thereafter granted should remain in force for the term of 17 years from the date of issue, and prohibiting all extension of such patents, *held*, to limit the duration of a United States patent for an invention previously patented abroad to the same inventor, to the term of 17 years from the date when the foreign patent had effect, as a patent, in his favor.

*W. K. Hall* and *J. J. Marrin*, for plaintiffs.

*E. Wetmore*, for defendants.

Blatchford, C. J. The original letters patent in this case were granted to Moritz Pinner, as assignee of Jean Bouvet, of La Rochelle, France, on the invention of Bouvet, and on his application as a subject of the empire of France, for an "improvement in metal cans, cases, boxes, etc., for preserving food, gunpowder, liquids, paints,

oils, and other articles." The date of the patent was June 28, 1864, and on its face it was granted for the term of 17 years from the twenty-eighth day of June, 1864. The patent was re-issued to Pinner, November 1, 1864, the re-issue being granted, on its face, for the term of 17 years from the twenty-eighth day of June, 1864. This suit is founded on the re-issued letters patent. It was brought to a hearing on bill, answer, replication, and proofs, and on the twenty-ninth day of June, 1878, a decree was made by the court establishing the validity of the re-issue and the fact of infringement by the defendants, and referring it to a master to take an account of the profits made by the defendants by the infringement, and awarding a perpetual injunction against the defendants from making, using, or selling cans or boxes containing the patented invention.

There was introduced in evidence by the defendants a patent granted in England to Bouvet for the same inventions that are claimed in the re-issued United States patent. This English patent was sealed January 6, 1863, and dated September 19, 1862. Bouvet filed on the latter day a provisional specification with the English commissioners of patents, and on the nineteenth of March, 1863, he filed a full specification in the great seal patent office in England. The French patent to Bouvet, hereinafter referred to, was not introduced in evidence in the cause by either party. It covers the same inventions which are claimed in the re-issued United States patent. It is now presented to the court, and on it and on all the pleadings, proofs, and papers in the case, and sundry new affidavits, a motion is now made by the defendants before the court held by the circuit judge and Judge Wheeler, that the said decree be amended by inserting therein a finding that the plaintiffs' re-issued patent is valid only for the term of 17 years from the date or publication of the prior patent for the same invention in France and England, and that the defendants be permitted to amend their answer by setting up said prior French patent; that the decree and the proofs be opened in order to prove the same in the cause; and that the injunction herein be suspended pending said proof, or discharged; and for such other or further order or relief as may be just.

The answer to the bill sets up that by the act of, or by and with the consent of, Bouvet, the improvements described in the United States re-issued patent were patented in Great Britain with date of September 19, 1862, the British patent thereon having been sealed on the sixth day of January, 1863, and that the said re-issued patent

expired by limitation or operation of law on or before January 6, 1875.

We have been furnished with a copy of the French patent in the French language, in manuscript, duly authenticated by the proper authority in Paris, and with what purports to be a translation of it. The French law concerning patents, which was in force when the transactions took place in France, in respect to said French patent, was that promulgated July 8, 1844. Under that law patents are granted for five, ten, or fifteen years, according to the tax paid.

Whoever wishes to take out a patent for an invention must deposit, under seal, at the office of the secretary of the prefecture, in a specified department, a petition, with a description of the invention, and necessary designs or patterns, and a list of the pieces deposited. The patent begins to run from the time of such deposit. Within five days after such deposit, the prefect transmits all the pieces deposited to the minister of agriculture and commerce. There they are opened, and the petition is enrolled. If the application is regular, a decree of the minister is delivered to the applicant, and constitutes the patent. To such a decree a duplicate of the description and designs are annexed. The patentee, during the duration of the patent, has a right to make additions, under the same regulations as to deposit of a petition, etc. A certificate of addition is delivered in the same form as the original patent, and has, from the dates of the demand and grant, respectively, the same effect as the principal patent, with which it expires. If a patentee wishes to take out a patent for five, ten, or fifteen years, for an addition, instead of a certificate of addition expiring with the original patent, he must, besides the same formalities, pay a new tax, as on an original patent. In the French patent under consideration there is first a patent granted to Bouvet for 15 years, and dated November 30, 1861, with a description and a drawing annexed, referred to in the description. The text shows that the patent was "taken" November 30, 1861.

The decree or grant appears to have been made by the minister January 25, 1862. Next, there is a certificate of an addition by Bouvet, of the date of December 21, 1861, to the patent of November 30, 1861, with a description and a drawing annexed. The text shows that the certificate of addition was "taken" December 21, 1861. The certificate appears to have been made by the minister, February 27, 1862. Next, there is a certificate of an addition by Bouvet, of the date of November 27, 1862, to the patent of November 30, 1861, with

a description and a drawing annexed, referred to in the description. The text shows that the certificate of addition was "taken" November 27, 1862. The certificate appears to have been made by the minister, February 20, 1863.

It is apparent, from these papers, that the two certificates of addition expired at the same time the original patent expired, namely, at the end of 15 years from November 30, 1861; that the first certificate of addition had effect, as a patent, from December 21, 1861; and that the second certificate of addition had effect, as a patent, from November 27, 1862.

On the motion to amend the decree, it is insisted by the defendants that the plaintiffs' patent is valid only for 17 years from March 19, 1863, the date of the filing of the full specification of the English patent, or only for 17 years from November 27, 1862, the date of the deposit of the description and drawing annexed to the second certificate of addition in the French patent, or only for 17 years from February 20, 1863, the date of the making of the certificate by the minister. On this view, it becomes unnecessary to consider, in respect to the English patent, any date earlier than March 19, 1863, or, in respect to the French patent, any date earlier than November 27, 1862, so far as the motion to amend the decree is concerned, or so far as the motion to amend the answer is concerned, or so far as the motion to open the decree and the proofs is concerned, or so far as the motion to discharge the injunction is concerned. The defendants do not contend, on any of such motions, that the plaintiffs' patent is valid only for 17 years from a date earlier than March 19, 1863, in view of the English patent, or only for 17 years from a date earlier than November 27, 1862, in view of the French patent and certificates of addition. No motion is now made to limit or define the time of the expiration of the United States patent, in reference to the time down to which the accounting must extend, and we do not consider the question whether, for the purposes of such accounting, the United States patent may not expire at a date earlier than 17 years from November 27, 1862, namely, at a date 17 years from a date earlier than November 27, 1862, in view of either the English patent or the French patent, or certificates of addition. Nor is it, under these views, necessary to consider the English patent at all. It is plain that the second certificate of addition to the French patent, taken in connection with the original French patent and the first certificate of addition, show fully and patent the same inventions patented by the

United States re-issued patent. Whether such inventions are fully shown and patented by the English provisional specification, or by the French original patent alone, or by the latter in connection with the first certificate of addition, we do not now consider or decide, for any purpose.

We determine on inspection, and in the absence of any affidavit to the contrary on the part of the plaintiffs, that the inventions patented by the French patent, and the two certificates of addition to it, all three taken together, are the same as those patented by the United States re-issued patent, to an extent sufficient to warrant the granting of the motion to amend the decree, and to amend the answer, and to open the decree and the proofs, and to discharge the injunction. The French patent and certificates of addition are not now admitted as a patent to a third party, to defeat the plaintiffs' patent on the question of novelty, but only on the question of the extent of duration of the patent. The patent can have no life beyond the time limited by statute. The question of such life, in view of the French patent and certificates of addition, has not been before presented and passed upon. It can now be presented and passed upon on a motion to vacate or limit the duration of the injunction, or on a motion by the plaintiffs for an attachment for violating the injunction.

The words "perpetual injunction," in the decree, mean only for the life of the patent. That must be determined by the statute and all the facts of the case, and not merely by the terms of the grant in the patent; and an interlocutory decree is always open to amendment and correction. In this view it seems proper that the answer should be amended to set up the French patent and certificates of addition, and that the decree should be amended by fixing a date beyond which, for the purposes of the injunction, the patent cannot have life, and by allowing the French patent and certificates of addition to be put in evidence in the proofs, with such relevant proofs respecting the same and their contents as either party may wish to offer. We think that, in view of the subject-matter of the application, the defendants have not been guilty of laches; that the application does not come too late; and that the reasons assigned in excuse for not making an earlier application are sufficient. But this case is no precedent for the case of an application to set up a defence to defeat a patent for want of novelty.

The plaintiffs' patent runs, on its face, for 17 years from June 28,

1864. The question is as to when it expires. The plaintiffs contend that, under the statute, it runs according to its tenor, and does not expire until the end of 17 years from June 28, 1864. It becomes necessary, therefore, to examine the statutes on the subject.

By the act of April 10, 1790, (St. at Large, 109,) a patent was to be granted to the inventor for any term not exceeding 14 years. By the act of February 21, 1793, (1 St. at Large, 318,) it was required that the invention should have been "not known or used before the application," and that the patent was to be granted "for a term not exceeding 14 years," and only to a citizen of the United States as inventor, or his assigns.

By the act of April 17, 1800, (2 St. at Large, 37,) the privilege was extended to alien inventors who, at the time of petitioning, had resided for two years within the United States, and it was required that the invention should not have been known or used before the application.

By the act of July 13, 1832, (4 St. at Large, 577,) the privilege was extended to every alien who, at the time of petitioning, should be resident in the United States and should have declared his intention, according to law, to become a citizen thereof. These prior acts were all of them repealed by section 21 of the act of July 4, 1836, (5 St. at Large, 125.) By that act (section 5) patents were to be granted "for a term not exceeding 14 years." Any inventor could obtain a patent, whether an alien or citizen. It was required that the invention should not, at the time of his application for a patent, be in public use or on sale, with his consent or allowance, as the inventor. The commissioner could not grant the patent if it appeared to him (section 7) that the invention—

"Had been invented or discovered by any other person in this country prior to the alleged invention or discovery thereof by the applicant, or that it had been patented or described in any printed publication in this or any foreign country, or had been in public use or on sale with the applicant's consent or allowance prior to the application."

It was further provided as follows, (section 8:)

"Nothing in this act contained shall be construed to deprive an original and true inventor of the right to a patent for his invention, by reason of his having previously taken out letters patent therefor in a foreign country, and the same having been published, at any time within six months next preceding the filing of his specification and drawings. And whenever the applicant shall request it the patent shall take date from the time of the filing of the specification and drawing; not, however, exceeding six months prior to the actual issuing of the patent."

The effect of this legislation was to allow an inventor to take out a patent in a foreign country for his invention, and subsequently to obtain a patent for it here, provided he filed his specification and drawings on his application here within six months after the taking out of his foreign patent. By section 6 of the act of March 3, 1839, (5 St. at Large, 354,) it was provided as follows:

"No person shall be debarred from receiving a patent for any invention or discovery, as provided in the act approved on the fourth day of July, 1836, to which this is additional, by reason of the same having been patented in a foreign country more than six months prior to his application: provided, that the same shall not have been introduced into public and common use in the United States prior to the application for such patent: and provided, also, that in all such cases every such patent shall be limited to the term of 14 years from the date or publication of such foreign letters patent."

The effect of this provision was to allow an inventor to take out a patent here for an invention which he had previously patented in a foreign country, no matter how long previously, but the duration of the patent granted here was limited to the term of 14 years from the date or publication of such foreign patent. Then came the act of March 2, 1861, (12 St. at Large, 246,) the sixteenth section of which provided as follows:

"All patents hereafter granted shall remain in force for the term of 17 years from the date of issue; and all extensions of such patents is hereby prohibited."

Section 17 of the same act repealed all acts and parts of acts theretofore passed which were inconsistent with the provisions of that act. Under this state of legislation the original patent, and the re-issued patent in this case, were granted.

The view urged for the plaintiffs is that by section 16 of the act of 1861 all patents thereafter granted were to remain in force for 17 years from the date of issue; that the provision of section 6 of the act of 1839 was inconsistent with this new provision, and was therefore repealed; and that, consequently, the plaintiffs' patent does not expire until June 28, 1881.

By section 22 of the act of July 8, 1870, (16 St. at Large, 201,) now section 4884 of the Revised Statutes, every patent is to be granted for the term of 17 years. It cannot be antedated. By section 25 of the same act, now section 4887 of the Revised Statutes, it is provided as follows:

"No person shall be debarred from receiving a patent for his invention or discovery, nor shall any patent be declared invalid, by reason of its having been first patented, or caused to be patented, in a foreign country; provided

the same shall not have been introduced into public use in the United States for more than two years prior to the application, and that the patent shall expire at the same time with the foreign patent, or, if there be more than one, at the same time with the one having the shortest term; but in no case shall it be in force more than 17 years."

These provisions of the act of 1870 apply only to patents granted after that act was passed, and do not apply to this case. Moreover, section 111 of that act, in repealing the acts of 1836, 1837, 1839, and 1861, provides that such repeal shall not "affect, impair, or take away any right existing under any of said laws."

It is quite apparent that the idea running through section 16 of the act of 1861 is that no patent thereafter granted should be extended, but that, instead thereof, their original terms of duration should be 17 years instead of 14 years, with a privilege of extension for seven years more, which had been the prior law. The language is "that all patents hereafter granted shall remain in force for the term of 17 years from the date of issue;" not that they shall by their terms, and on their face, be granted for 17 years from a date, but that they shall "remain in force" for the term specified. It was not improper, under this provision, to grant them for 17 years from a date, as came to be the practice. But the test is that, whatever be the term on their face, they shall remain in force for the term of 17 years from the date of issue.

What is "the date of issue?" Under section 8 of the act of 1836, in force when the act of 1861 was passed, and when the patents in this case were issued, the patent could "take date" from a date earlier, though not exceeding six months earlier, than the "actual issuing of the patent." The actual date of issuing was one thing, one date. The date from which the patent took date, or its term began to run, was another thing, another date. The latter date may very properly be called "the date of issue." Such latter date need not, necessarily, be a date expressed on the face of the patent. Under section 6 of the act of 1839, such latter date is "the date or publication" of the foreign patent. Looking at the state of legislation before 1861, and at the evident scope of section 16 of the act of 1861, as aimed at extensions of patents, it would be reasonable to say that "the date or publication" of the foreign patent spoken of in section 6 of the act of 1839 might be regarded, in reference to patents issued under such section 6, (as the one in this case was,) as "the date of issue" intended by section 16 of the act of 1861,—the date from which, under such

circumstances, the United States patent is to take its departure. And that, as before in practice, United States patents were granted for 14 years, and patents for inventions previously patented abroad to the same inventor were before limited to 14 years from the date or publication "of the foreign patent," so now, under the new system introduced by the act of 1861, such a patent (still to be granted, otherwise, in accordance with the provisions of the act of 1836 and 1839) was to remain in force for 17 years from "the date or publication" of the foreign patent, while the United States patents were to remain in force for 17 years, instead of 14 years, from their "date of issue;" the privilege of having them "take date" from a date not exceeding six months prior to the actual issue, as the "date of issue," under section 8 of the act of 1836, being still preserved, and such patents expiring 17 years from such "date of issue," and not 17 years from the actual issuing. There is nothing in these views that is inconsistent with or does violence to the language of section 16 of the act of 1861, and they are in harmony with the course of legislation. Contrary views would determine that there was, by section 16 of the act of 1861, a sudden, unexpressed, and only implied change of the policy of section 6 of the act of 1839, then in force for 22 years; such policy making the terms of patents, like those in the present case, take date from the date or publication of the foreign patent, and run from that time for the same time other United States patents ran, from their time of beginning to run. And such contrary views would establish an enlargement of term, by the act of 1861, in favor of an invention previously patented abroad; such enlargement remaining in force till 1870, and then curtailed in 1870 so as to be more narrow than under the act of 1839, and to make the United States patent expire at the same time with the foreign patent having the shortest term.

No argument can be drawn in favor of the plaintiffs' view, from the fact that, in section 16 of the act of 1861, the expression is, "all patents hereafter granted." Literally, such expression covers future patents granted as re-issues. By section 13 of the act of 1836, (5 St. at Large, 122,) which continued in force after the act of 1861 went into force, a re-issue is authorized, and the re-issued patent is there called "a new patent," and is authorized to be issued only for the residue of the period then unexpired, for which the original patent was granted. Yet it never was or could be supposed that under section 16 of the act of 1861 a re-issued patent was to be granted for 17

years from the date of the actual issuing of such re-issued patent, or for any other term than the residue of the 17 years granted by the original patent. The expression, "date of issue," as before defined, controls re-issues under said section 6, and the re-issue of an original 17 years' patent is to run for 17 years from the date when the original term of 17 years began to run, which date is to be considered "the date of issue," under section 16, for the purpose of a re-issue. So, again, "all patents" literally includes design patents granted under section 11 of the act of 1861. Yet it never was or could be supposed that section 16, though later in place in the act than section 11, varied the terms defined in section 11 for the duration of design patents, namely, three and one-half years, seven years, or fourteen years; or that the provision in said section 16 as to extension applied to "all patents," when section 11 had authorized the extension of design patents for seven years. We are not referred to any judicial decision, where the question now considered was directly involved, which holds to the contrary of the construction we thus give to section 16 of the act of 1861. In *Weston* v. *White*, 13 Blatchf. 364, the United States patent was granted August 6, 1867. A prior English patent for the same invention had been granted to the patentee and had been published, October 22, 1859. The question arose in May, 1876, whether the United States patent had expired October 22, 1873, at the expiration of 14 years from October 22, 1859, or whether, under section 16 of the act of 1861, it remained in force in May, 1876. If it should expire October 22, 1876, (being 17 years from October 22, 1859,) or if it should remain in force till August 6, 1884, (being 17 years from August 6, 1867,) it remained equally in force, in either case, in May, 1876. It was necessary, in May, 1876, only for the court to decide that the patent had not, under section 6 of the act of 1839, run out in 14 years from October 22, 1859, and the question whether it would run out October 22, 1876, or not till August 6, 1884, was not directly involved. Nor does it seem to have been argued or considered, except as may be inferred from the fact that the court says that the patent would not expire until October 22, 1876, and further says that the effect of the sixteenth and seventeenth sections of the act of 1861 was that patents issued after the passage of the act of 1861, and falling within the proviso of section 6 of the act of 1839, would run for 17 years from the date or publication of the foreign patent. The case was one in the circuit court of the United States for the district of Connecticut, before Judge Shipman. In

*Anilin* v. *Hamilton Manuf'g Co.* 13 O. G. 273, before Judge Shepley, in February, 1878, in the circuit court of the United States for the district of Massachusetts, the decision was that section 25 of the act of July, 1870, now section 4887 of the Revised Statutes, did not apply to a re-issue granted by the United States in April, 1871, of a patent originally granted by the United States in October, 1869, and that, therefore, the re-issue did not expire in December, 1871, when the prior foreign patent, taken in June, 1869, expired. Nothing was said as to whether it would expire in June, 1883, or in June, 1886, or in October, 1886, or in April, 1888.

In *Goff* v. *Stafford* 14 O. G. 748, before Mr. Justice Clifford and Judge Knowles, in October, 1878, in the circuit court of the United States for the district of Rhode Island, the United States patent was granted October 3, 1865, for 17 years from that day. An English patent had been previously granted to the same patentee, for the same invention. The English patent was dated June 13, 1863, and was for 14 years; it was sealed December 8, 1863, and the complete specification was filed December 12, 1863. The question arose as to whether the United States patent had expired. It had expired December 12, 1877, if it remained in force for only 14 years from December 12, 1863. If it remained in force for 17 years from December 12, 1863, or for 17 years from October 3, 1865, it was equally in force in October, 1878, for the purposes of the injunction, which the court granted. The only question raised, in pleading or argument, seems to have been as to whether the patent had expired. When in the future it would expire, was not directly involved. The contention of the defendant in the case seems to have been that, because of the act of 1870, the United States patent had expired when the foreign patent expired, namely, June 13, 1877. The court held that the act of 1870 did not apply to the case, because the patent was granted before that act was passed. But Mr. Justice Clifford, in the decision, went on to say that the patent would remain in force for 17 years "from the time it was granted," because it was granted under the act of 1861. He seems to have meant for 17 years from October 3, 1865. We cannot regard the case, in that respect, as a decision on a point necessarily involved. With the highest regard for all the judicial views of so eminent a judge as Mr. Justice Clifford, particularly as to questions arising under the law of patents, our examination of the question directly involved in the present case has led us to different views, and to the belief that such question was not argued

before, or fully considered by, the court in Rhode Island, because not directly involved in the case.

The views announced in this decision, which are concurred in by both of the judges, lead to the conclusion that the motion of the defendants must be granted, so far as to direct that the decree be amended by inserting a finding that the plaintiffs' re-issued patent is valid, for the purposes of the injunction granted, only for the term of 17 years from November 27, 1862, without holding whether, for the purposes of the accounting ordered, it is valid for as long a term as that, and that the defendants be permitted to amend their answer by setting up said French patent and the two certificates of addition, and that said decree and the proofs be opened, in order to allow them to introduce the same in evidence, and to allow either party to introduce any relevant testimony in respect to the same and their contents, and that the provision for the injunction and the injunction be now vacated and discharged.

We fix the date of November 27, 1862, and not the date of February 20, 1863, because we regard it as the clear intention of the provisions of law limiting the duration of a United States patent, patenting an invention previously patented abroad to the same inventor, to give to the patentee a specified term from the date at which his foreign patent had effect as a foreign patent in his favor. In this case such date was November 27, 1862, and not February 20, 1863. This view is not necessarily applicable to a case where a foreign patent to one inventor is set up to defeat a United States patent to a different inventor. In such case the manifest intention of the law is that the foreign patent shall apply only as of a date when the invention was published or was accessible to the public, and not as of an earlier date, from which the inventor may have enjoyed the benefit of the foreign patent as a patent. The language of section 16 of the act of 1861, in saying that the 17 years is to run from "the date of issue," is a marked departure from the expression, "date or publication" of the foreign patent, in section 6 of the act of 1839; and in reading the two sections together, full effect must be given to the new expression.