SCHOERKEN *v.* THE SWIFT & COURTNEY & BEECHER Co.

*(Circuit Court, S. D. New York.   April 28, 1881.)*

1. PATENT—JUDICIAL NOTICE OF FOREIGN NATIONS—COMITY.
    Courts of the United States take judicial notice of foreign nations and their seals of state, but not of their inferior officers or departments and their seals.

2. FOREIGN PATENT—SECTION 893, REV. ST., CONSTRUED—AUTHENTICATION OF FOREIGN PATENT—AUTHENTICATION OF FRENCH PATENT.
    Section 892, Rev. St., provides that copies from the United States patent-office, certified by the commissioner of patents, shall be evidence in all cases where the originals would be evidence; and section 893, Rev. St., provides that copies of foreign patents, authen-

ticated as in section 892, shall be *prima facie* evidence of the granting thereof, and their contents, *held*, that a copy of a French patent, certified by the director of the national conservatory of arts and manufactures, under its seal, and verified by the ministers of agriculture and commerce, and of foreign affairs, under their seals, but not under the great seal of France, was properly authenticated and admissible in evidence.

3. SAME—FRENCH PATENT—PUBLIC PATENT—SECRET PATENT—"PATENTED" CONSTRUED.

There are patents in France which may, for public and special reasons, be kept secret. The expression "patented," in the statute, would seem, from the signification of the word, to mean only inventions laid open to the public and protected to the inventors, and such is the construction which it has hitherto received.

4. SAME—OPEN PATENT—SECRET PATENT—PUBLIC PATENT ONLY IN CONDITION TO BE CERTIFIED.

It being objected that it did not appear from the copy of a foreign patent, introduced to show prior invention, whether it was an open patent or secret one, *held*, that since only public records are provable by copy certified merely, and as the authorities of a foreign government would not have a patent in a condition to be certified if it was secret, the fact that it is certified shows it to be what could be certified, and that the invention described by it was, in the sense of the patent law, patented by the original patent of the copy produced.

5. PATENT No. 63,104—IMPROVED MATCH-BOX.

Patent No. 63,104, dated March 19, 1867, for an improved match-box, *held, invalid*, by reason of prior French patent No. 52,907, dated February 6, 1862, for the same invention.

In Equity.

*Arthur v. Briesen*, for plaintiff.

*Henry E. Davies, Jr.*, for defendant.

WHEELER, D. J.   This suit is brought upon letters patent of the United States No. 63,104, dated March 19, 1867, and issued to the orator, for a match-box. Among the defences set up in the answer is one that the same invention had been previously patented in letters patent of France No. 52,907, dated February 6, 1862, and a certificate of addition thereto, dated April 29, 1864, granted and issued to one Caussemille. The orator's invention is not shown earlier than the patent. The defendant has filed in evidence what purports to be a copy of the patent set up in the answer, certified from France. The orator objects to this copy as evidence, for want of sufficient authentication, and insists that, if admissi-

ble in evidence at all, it does not show such an open public patent as will defeat a patent of the United States, and that it does not purport to be a patent for the same invention.

Courts of this country take judicial notice of all other nations, and their seals of state, but not of their inferior departments and their officers and seals. The copy filed in evidence is certified by the director of the Conservatoire National des Arts et Metiers of France, under the seal of that department, verified by the minister of agriculture and commerce, and the minister of foreign affairs, under their seals, but not by the great seal of France. This would not be sufficient proof of the copy if the common law was to govern. *Church* v. *Hubbart*, 2 Cranch, 187. But the difficulties of making proof of foreign as well as of domestic patents have been lessened by statute. Copies of any records, books, or papers belonging to the patent-office, and of letters patent, authenticated by the seal, and certified by the commissioner or acting commissioner, are made evidence where the originals would be evidence. Rev. St. § 892. And "copies of the specifications and drawings of the foreign letters patent, certified as provided in the preceding section, shall be *prima facie* evidence of the fact of the granting of such letters patent, and of the date and contents thereof." Rev. St. § 893.

This department and its directors, in France, correspond to the patent-office and its commissioner in the United States, as is understood, and the minister of agriculture and commerce to the secretary of the interior. So that this copy comes from the proper source, is authenticated in the proper manner, and is admissible in evidence under the statute. *De Florez* v. *Raynolds*, 17 Blatchf. 436.

This defence, as formulated in the Revised Statutes, is that the invention shall have been patented before the supposed invention by the patentee. Section 4920, par. 3. There are patents in France which may, for public and special reasons, be kept secret. The expression "patented," in the statute, would seem, from the signification of the word, to mean only inventions laid open to the public and protected to the inventors, and such appears to be the construction which the

expression has heretofore received. There is nothing to show whether this is an open patent or one made secret, except what can be gathered from the copy itself, and the fact of its production. Only public records are provable by copy certified merely, and these departments of the government of France would not have the patent in condition to certify by copy if it was secret, and not public. So the fact that it is certified shows it to be what could be certified, and that the invention described by it was, in the sense of the patent law, patented by the original patent of the copy produced. The patent is prior to the orator's invention, and the invention patented by it is to be compared with the orator's.

The orator states in his specification that the nature of his inventions "consists in so attaching an elastic band or strap to the upper end of an outer box, and to the hinged part of the lid of an inner box, sliding in the outer one, that when the inner box is drawn out from the outer one the lid of the former shall, as soon as it has passed beyond the upper side of the outer box, be elevated by means of the stretching of the elastic band, and thus open the inner box."

The elastic band is further described as attached to the hinged lid of the inner box "a little forward" of the hinge, and a loop or knob on the outer end of the inner box, to take hold of, is shown. The operation is described to be that when the inner box is pulled out the band is stretched, and as soon as pulled out beyond the hinge the lid is raised by the band "acting as it were on a lever near its pivot," and the box is kept open; and, on pressing down the lid, the action of the elastic band will draw the inner box back to its position in the outer box. The claim is for "connecting the hinged part of the cover of an inner sliding box with the back of an outer case, by means of an elastic band or strap, substantially as and for the purpose described."

The patent of Caussemille shows an outer box open at one end, with an inner box fitting and sliding into it, having a hinged lid opening upward, and an elastic band fastened at one end to the backside of the outer box, and at the other end to the hinged lid, and a tongue at the outer end of the

inner box to take hold of to pull it out. The description in that patent and the first addition is of structures and their operations so much like those of the orator, that, on the argument, they were conceded to be the same, except it was claimed that in Caussemille's the hinged lid was to be raised by the fingers when the box was drawn out, instead of by the elastic band; therefore, this difference only needs to be attended to. This addition is accompanied by drawings, in which the closed end of the outer box is designated by the letter *a*, the inner box by *b*, the outer box by *c*, the elastic band by *d*, the hinged lid by *e*, the tongue on the inner box by *f*, and, in one figure, the position of the hinged lid, with the inner box withdrawn and the lid fully open, is shown in red ink. The copy is in the French language, and in this part proceeds:

" La tirette, *d*, est fittee d'une part au fond de la boite, *c*, et d'autre part, au couvercle mobile, *e*, du tiroir, *b*, que contient les allumettes. Une languette, *f*, sert a faire sortir le tiroir hors de la boite lorsqu' ou vent prendre des allamettes. En tirant le tiroir, *b*, au moyen de la languette, *f*, le couvercle a brisure, *e*, tend la tirette de caoutchouc, *d*, et prend la position d'arret indignee a l'encre rouge."

Translated, this reads:

The spring, *d*, is fitted at one extremity to the end, *a*, of the box, *c*, and at the other to the movable cover, *e*, of the drawer or box, *b*, which contains the matches. The tongue, *f*, serves to pull the drawer out of the box when matches are wanted. In pulling out the drawer by means of the tongue, *f*, the movable cover, *e*, stretches the India-rubber spring, *d*, and takes the fixed position indicated by the red ink.

Here is no indication that the movable cover is raised by the fingers of the person using the box, and in that way opened. When the cover, in being drawn out with the inner box, stretches the elastic band, the band resists the force by pulling upon the lid; and, as the box continues to move outward, the lid, when it has passed beyond the hinge, is pulled upward and opened. This is done precisely as the hinged lid of the plaintiff's box is opened. The place of fastening the band to the lid is not indicated, but it must be "a little forward" of the hinge in order to be fastened to the lid itself, for it could not well be fastened to the hinge between the two parts of the lid, and, besides, that would not answer the de-

scription; and it acts, "as it were, on a lever near its pivot." Here is the connecting the hinged part of the cover of an inner sliding box with the back of an outer case by means of an elastic band or strap, substantially as claimed in the plaintiff's patent.

In 1868 Caussemille took out a fifth certificate of additions to this same patent. In that addition an employment of the rubber spring, to open the inner box as that is drawn out, is described, which is claimed by the orator to be the same as his invention, and to show that Caussemille did not understand and intend to describe it when he applied for and took his first certificate of addition. In that the rubber spring is described as attached to the lid a little forward of the hinge, and to pass through the fitted part of the lid tightly, a little back of the hinge, into the inner box, and through the inner end of that box, and to be attached to the closed end of the outer box, making practically two working parts of the spring,—one working constantly between the movable and immovable parts of the lid to raise the movable part whenever the inner box was drawn out past the cover of the outer box far enough so it could be raised, and the other to return the inner box into the outer when freed. In the plaintiff's patent and Caussemille's first addition, the spring passes wholly outside of the inner box, and the invention described in them is different from that described in the fifth addition. So the foundation of this argument fails, even if the argument would be sound.

Let a decree be entered dismissing the bill of complaint, with costs.