SIEMENS and others *v.* SELLERS and others.*

*(Circuit Court, E. D. Pennsylvania.  May 14, 1883.)*

1. PATENTS—LIMITATION AND DURATION OF PERIOD—SECTION 16, ACT OF MARCH 2, 1861, CONSTRUED.

  Where letters patent were granted under the act of 1861 for the term of 17 years from their date, and the invention had been patented abroad by the inventors more than six months before the filing of the American application, *held,* that the letters patent of the United States are limited to a term of 17 years from the date or publication of the foreign letters patent. *De Florez* v. *Raynolds,* 17 Blatchf. 436, [S. C. 8 FED. REP. 434,] followed.

2. SAME—REGENERATOR FURNACES.

  Reissued letters patent of the United States, No. 3,265, for improved regenerator furnace, and English letters patent of 1861, No. 167, *held* to be for the same invention.

3. LIABILITY OF DIRECTORS OF CORPORATION FOR INFRINGEMENT OF LETTERS PATENT.

  Whether the directors of a corporation are individually liable for infringement of letters patent by the corporation of which they are directors, not decided.

Hearing on Bill, Answer, and Proofs.

Bill in equity by Charles and Frederick Siemens against William Sellers, Edward W. Clark, John Sellers, Jr., Joseph F. Tobias, and James A. Wright, praying an injunction and an account for an alleged infringement of reissued letters patent No. 3,265, dated January 12, 1869, granted to complainants for an improved regenerator furnace for metallurgists and others.

The answer denied infringement, but contained, *inter alia:*

"We believe that the Midvale Steel Works, a corporation organized under the laws of the state of Pennsylvania, and doing business in the city of Philadelphia, has, since July 22, 1878, used a furnace embodying substantially the construction and mode of operation specified and claimed in the said reissued letters patent; and we admit that we have been directors of the said corporation since July 22, 1878, but we are informed and believe that such user by such corporation, of which we have been, as aforesaid, directors, even if it constituted a violation by said corporation of the rights of the complainants in said letters, is not a violation of said rights for which we are, or either of of us is, in any way liable or accountable."

The answer further averred that "English letters patent No. 167, of 1861, dated January 21, 1861, and sealed July 19, 1861, were granted to the complainants for 'improvement in furnaces,'" and that "the said invention so patented by said letters patent is sub-

*Reported by Frederick F. Hallowell, Esq., of the Philadelphia bar.

  Affirmed.  See 8 Sup. Ct. Rep. 117, *sub nom.* Guarantee Ins., T. & S. D. Co. v. Sellers.

stantially the same invention patented in the reissued letters patent of the United States aforesaid, by reason whereof the said last-named letters patent, under the provision of the statute in such case made and provided, are limited to the term of 17 years from the date or publication of such English letters patent aforesaid;" and averred that "by reason of such limitation the said reissued letters patent expired on or before the twenty-second day of July, 1878," prior to the date of the said use by the Midvale Steel Works.

*C. S. Whitman* and *Read & Pettitt*, for complainants.

The duration of the American patent is not limited to the term of 17 years from the date of the English patent. *Goff* v. *Stafford*, 14 O. G. 748.

The directors of a corporation are individually liable for an infringement by it. Field, Corp. § 156; 2 Hil. Torts, (3d Ed.) 16, 457; Thomp. Liab. Officers, etc., 352; *Goodyear* v. *Phelps*, 3 Blatchf. 91; *St. Louis Co.* v. *Quimby*, 18 O. G. 571; *Poppenhusen* v. *Falke*, 4 Blatchf. 493.

*Baldwin, Hollingsworth & Fraley*, for defendants, cited:

*Weston* v. *White*, 13 Blatchf. 364; *Badische Anilin & Soda Fabrik Co.* v. *Hamilton Manuf'g Co.* 13 O. G. 273, and 3 Ban. & A. 236; *Nathan* v. *N. Y. El'd R. Co.* 2 FED. REP. 228; *De Florez* v. *Raynolds*, 17 Blatchf. 436, 450; [S. C. 8 FED. REP. 434;] *Reissner* v. *Sharp*, 16 Blatchf. 383, and Story. Ag. (9th Ed.) §§ 140 *et seq.*; *Lightner* v. *Brooks*, 2 Cliff. 287; *Lightner* v. *Kimball*, 1 Low. 211; *United Nickel Co.* v. *Worthington*, 13 FED. REP. 392.

BUTLER, J. On the first of March, 1864, the complainants obtained letters patent from the United States for "improved regenerator furnace for metallurgists and others," and on the twelfth of January, 1869, procured a reissue of the same. The bill, after reciting these facts and making the usual averments, charges the respondents with infringement of their rights under the patent. The answer, admitting the grant of letters as claimed, denies that the respondents, or either of them, have "made, used, or sold furnaces embracing, in their construction or mode of operation, substantially the invention patented by said letters;" that "they believe the Midvale Steel Works, a corporation organized under the laws of Pennsylvania, doing business at Philadelphia, has, since July 22, 1878, used a furnace embracing substantially the construction and mode of operation specified and claimed in said letters;" and admit that they "have been directors of said corporation since July 22, 1878;" but say they "are informed and believe that such use by said corporation, even if

it constituted a violation by said corporation of the complainants' rights in said letters, is not a violation for which they or either of them are in any way liable."

The answer then proceeds to aver that English letters patent, No. 167, of 1861, dated January 22, 1861, and sealed July 19, 1861, were granted to the complainants for "improvements in furnaces," and that said invention thus patented is substantially the same as that for which letters were granted by the United States, and here sued upon; and that the said last-named letters patent are consequently limited to a term of 17 years from the date or publication of the English letters; and that the letters sued upon, therefore, expired on or before July 22, 1878, and before the alleged infringement complained of. The defense thus presented is two-fold: *First,* that the alleged infringement did not occur until after the expiration of the patent; *second,* that the defendants, as here sued, are not responsible; and involves the following questions: *First,* are the English and American patents for the same invention? *Second,* if they are, is the latter limited to a term of seventeen years from the date or publication of the former? *Third,* are the respondents personally responsible for the acts of the steel company?

As respects the first of these questions a careful examination of the specifications and drawings, after full consideration of the elaborate and able argument of complainant's counsel, has satisfied me that the invention embraced in the patents is substantially identical. In construction and mode of operation they seem in all essential respects to be the same. I cannot doubt that had any one, here, manufactured or used a regenerator furnace for metallurgical purposes, since the date of the American patent and before its expiration, constructed in the most precise accordance with the English patent, or had, there, during the term of the latter, manufactured or used such a furnace, constructed in accordance with the American patent, he would speedily have been charged with infringement, and held responsible in damages.

To enter upon a comparison of the specifications and drawings of the two patents, and an analysis of the testimony relating to the subject, would be a useless expenditure of time. Aside from the testimony of the witnesses, it seems impossible to read the specifications and compare the drawings, side by side, and avoid the conclusion stated; and the testimony of the witnesses tends in the same direction, adding strength to the conclusion. Indeed, except as respects literal description of the apparatus, there is scarcely a shade of dif-

ference between the description of the invention, here and abroad, when the drawings and specifications are considered together. Not a thought is expressed in the American patent that is not to be found in its English predecessor. Every claim of the former may as readily be sustained by reference to the specifications and drawings of the one as the other.

The principal differences sought to be established by the complainants are—*First*, that the American patent provides for a more perfect mixture of the air and gas, by introducing the air into the "mixing chamber" *behind or above* the gas, instead of in front; *second*, that it contains regulating valves in the air and gas chambers or channels; *third*, that it contains a different provision for the *introduction and circulation of air under the bed of the furnace*. These differences, however, I do not find, except to such immaterial extent as renders them unimportant. No reference is made in the American patent, or any paper accompanying it, to the materiality of introducing the air behind or above the gas; and it is quite plain that no importance was at the time attributed to it. If advantageous, the fact was undiscovered. The patent was not confined to such an arrangement of the air and gas passages. If reversed, the claim would have covered it. The circumstances justify a belief that the arrangement in this respect, shown in the American drawings, was virtually accidental, and considered immaterial.

In the English patent the drawings for the glass furnace snow the passages reversed, the gas entering behind, while in the puddling furnace the arrangement is still different; and in neither patent, nor in any paper connected with it, is there a suggestion that the particular arrangement shown is of any consequence. I cannot doubt that the English patent covered the arrangement shown in the American drawings. At a later date C. W. Siemens, one of the complainants, discovered that the method of introducing air and gas might be improved, and in 1877 obtained a patent in this country for this improvement. Still, however, no suggestion is made respecting the importance of introducing the air back of or above the gas, or of the manner of conducting the air and gas into the "mixing chamber." The improvement consisted substantially in keeping the two fluids separated, thus avoiding combustion until the point is reached at which heat is required.

As respects the regulating valves shown in the air and gas channels of the American drawings, they are certainly embraced in the

English patent. While the drawings there do not exhibit them, they are called for in the specifications, which say: "Dampers are provided for in the air and gas channels, by which the quantity and quality of the flame can be regulated to the utmost nicety." And again: "The currents of heated air and gas, in ascending from and through the regenerators into the furnace, cause a *plenum* of pressure within the same which is capable of being modified or regulated by valves for the admission of air and gas to the regenerators, and by the chimney damper. By the same arrangements the chemical qualities as well as the intensity of the flame can be regulated to the utmost nicety." That the English drawings do not show these regulating valves, is unimportant. A competent builder would know where to place them. ·

The same must be said respecting the provisions for introducing and keeping up a supply of air to the bed of the furnace. The English patent shows substantially the same thing. The open chamber, lettered C, in the American drawings and patent, is distinctly shown in the English patent, there lettered *a;* and its purpose and value are there set out substantially as here,—the protection of the bottom or hearth, and the crown of the arches below, by providing for the passage of a sufficient quantity of cool air through the space, *a,* to prevent the cumulative action of the heat, which, in long-continued use of the furnace, would end in its destruction.

The statement of complainants' experts that a furnace fit for actual use in metallurgical operations, could not be made from the English specifications does not seem entitled to much weight. If true it would serve as well for condemnation of the American patent as the English. It is opposed, however, by other important testimony, and also by the emphatic assertions of the complainants themselves, in taking out the English patent.

Having ascertained the patents to be for the same invention, the second question stated becomes important: Did the American patent expire before the occurrence of the infringement alleged—in other words, at the expiration of 17 years from the date or publication of the English patent? This involves a construction of the patent laws of the United States, at the date of complainants' letters. The language of the act of 1861, that "all patents hereafter granted shall remain in force for 17 years from the date of issue," and "all acts and parts of acts heretofore passed which are inconsistent with this act are hereby repealed," considered in connection with former and

existing legislation respecting inventions first patented abroad, was well calculated to create the doubt and embarrassment which have followed.

In the absence of decisions by other courts, I believe I would have reached the conclusion that the language first quoted was intended simply to increase the duration of all patents thereafter issued, equally, giving to each an additional period of three years, without interfering with the distinction, so long maintained, between inventions originally patented here and those first patented abroad. The question, however, having been fully considered by Judge BLATCHFORD, in a case requiring its decision,—*De Florez* v. *Raynolds*, 17 Blatchf. 436, [S. C. 8 FED. REP. 434,]—I am content to adopt his views, without entering upon the discussion. The reasons on which he rests his conclusion commend themselves to my judgment. In *Weston* v. *White*, 13 Blatchf. 364, the question was decided in the same way. Its decision, however, was not actually necessary, and was made without discussion. In *Goff* v. *Stafford*, 14 O. G. 748, Judge CLIFFORD held otherwise. Here again, however, as in *Weston* v. *White*, the question was not directly involved, and was but slightly considered.

It would be unprofitable to go further. What has been said disposes of the case. The bill must be dismissed, with costs.