45 C.C.P.A. (Patents).

**Application of BO THURESSON AF EKENSTAM.**

**Patent Appeal No. 6372.**

United States Court of Customs and Patent Appeals.
June 24, 1958.

Frederick E. Hane, New York City (Abraham J. Nydick, New York City, of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, and RICH, Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, one member dissenting, affirming the rejection by the Primary Examiner of claims 1 to 4, inclusive, and 6 to 9, inclusive, of appellant's application for a patent on a method of oxidizing cyclic compounds. The rejection is based on a single reference, namely the patent to Du Pont (Belgium) 494,439, having a "brevet octroyé" date of March 31, 1950, and a "brevet publié" date of July 1, 1950.

Since it is not disputed that the reference discloses the invention defined by the appealed claims, it is unnecessary to consider such disclosure or the claims. The sole issue is whether the effective date of the reference is March 31, 1950, or July 1, 1950. If it is the former then the reference is a statutory bar under 35 U.S.C. § 102(b) to the allowance of the claims in appellant's application, which was not filed until June 2, 1951. If it is the latter, then there is no statutory bar, and the reference is overcome by appellant's Swedish application filed June 12, 1950, a certified copy of which has been made of record in the Patent Office, and which has been held to disclose the rejected invention. It follows that if the board correctly held March 31, 1950, to be the effective date of the reference the decision appealed from should be affirmed, but if, as contended by appellant, the effective date is July 1, 1950, it should be reversed.

The majority of the Board of Appeals, relying on the board's prior decision in Ex parte Scalera et al., 104 U.S.P.Q. 75, was of the opinion that availability to the public was not an essential feature of patenting. Neither in the Scalera et al. decision nor in the majority opinion of the board in the instant case was the matter extensively discussed. In each case it was recognized that the authorities were in conflict, but the decision of the United States District Court for the Southern District of New York in General Electric Company v. Hygrade Sylvania Corporation, 61 F.Supp. 476, was adopted as setting forth the proper conclusion. Accordingly, the "brevet octroyé" date of March 31, 1950, was held to be the effective date of the Du Pont Belgian patent here involved.

The significance of the "brevet octroyé" and "brevet publié" dates of a Belgian patent is fully pointed out in the carefully documented and well-reasoned opinion of the dissenting member of the board, which has been of great help in our review of this appeal. His statements of fact with respect to the significance of those dates appear to have been accepted without controversy by both parties. From those statements it appears that on the "brevet octroyé" date (March 31, 1950, in the instant case), which is normally less than a month after the application is filed, there is issued a decree which does not expressly grant specific rights but merely certifies that the application complies with the formal requirements. Nothing is sent to the applicant at that time, but he may ask for and receive as many official copies of the decree as he desires at any time after the "brevet octroyé" date. If he does not ask for such copies, a copy is mailed to him about six months after the date of the decree. The term of the patent begins on the day the application is filed but, as a practical matter, no court would grant relief unless it were presented with a copy of the decree, thus no suit could be effectively brought prior to the "brevet octroyé" date.

The application is deliberately kept secret from the public until the "brevet publié" date (July 1, 1950, in the instant case), which is approximately three months after the "brevet octroyé" date. During that period the applicant may, if he desires, withdraw his application, in which case the decree is cancelled and the application is not made public. In

the absence of such a request, the application papers are made available to the public on the "brevet publié" date. It is agreed here that at least as early as that date the application becomes a patent.

■ The applicable Belgian law provides that the decree above referred to "shall constitute the patent" and the expression "brevet octroyé," which appears on the printed copies of the specification, may properly be translated "patent granted." In our opinion, however, the Belgian interpretation as to the "patent granted" is not in any wise binding on us as to whether the invention is patented there within the meaning of 35 U.S. C. § 102. It seems to us that section relates to the substance of what is actually done in a foreign country, rather than to the form or the literal meaning of language used in connection therewith. It is extremely difficult for us to believe that Congress intended anything which might happen to be called a "patent" in foreign countries should *ipso facto* be a bar to applicants in this country regardless of how remote it might be from what is generally understood here as being a patent. It may be that a foreign patent bearing a "patented" date is *prima facie* evidence that patenting took place on that date but where, as here, the facts as to what actually took place on the alleged date of patenting are not in dispute, the determination should be made on the basis of those facts rather than on any presumption.

The word "patent" is derived from the Latin "patere," meaning "to be open," and the significance of "open" is still commonly attached to that word. For example, Funk & Wagnalls' Standard Dictionary defines "letters patent" as "an open document, under seal of the government, granting some special right, authority, privilege or property, or conferring some title; especially a document giving to the person named the exclusive right to use, make, or sell some invention." Similarly the Century Dictionary and Cyclopedia, after stating that "letters patent" means an open letter, explains that "Letters patent are so called because they were commonly addressed by the sovereign to all subjects at large and were not sealed up like a secret commission, but open, ready to be shown to whom it might concern." The Encyclopedia Brittanica says of letters patent that "They are not sealed up, but are left open (hence the term 'patent') * * * ."

It is also noted that in each instance in which prior patenting is made a statutory bar by Title 35 U.S.C., it is coupled with publication, by the use of the expression "patented or described in a printed publication" (35 U.S.C. § 102(a) and (b) and 119), which would seem to indicate a connection between patenting and availability to the public. In the recent case of In re Tenney, 45 C.C.P.A., Patents, ——, 254 F.2d 619, it was pointed out that the apparent reason for making a prior description of an invention in a printed publication a bar to the granting of a patent on an invention was that if knowledge of the invention was already available to the public there was no consideration for the patent grant. We think it reasonable to assume that prior patenting was made a bar for the same reason and on the assumption that a patented invention would be available to the public.

There seems to be no logical reason why the granting of a secret patent abroad should be a bar to patenting in this country. Such a foreign patent is of no value to persons in this country unless and until it is made available to the public. It is to be noted that even a widespread prior knowledge of an invention abroad does not alone bar the grant of a patent in this country, and it is not reasonable to suppose that Congress intended to give greater effect to secret patenting abroad than to public knowledge there.

While the decisions as to whether availability to the public is essential to constitute patenting are somewhat conflicting, most of them appear to hold that a secret foreign patent is not a proper reference against an application for a patent in this country.

The earliest reported case involving that question is Brooks v. Norcross, Fed. Cas. No. 1,957, 2 Fish.Pat.Rep. 661, in which the court said, with respect to a provision of the Patent Act of 1836 prohibiting the grant of a patent on an invention which has been "patented" abroad:

"The word 'patented' as here used, must of course mean covered and made known to the world by a public patent, so as to bring home to the public, generally and probably, a knowledge of its existence, and deprive anyone of the credit and protection of being original, if he afterward construct a like machine."

In Elizabeth v. Pavement Co., 97 U.S. 126, 24 L.Ed. 1000, the Supreme Court said:

"A foreign patent, or other foreign printed publication describing an invention, is no defence to a suit upon a patent of the United States, unless published anterior to the making of the invention or discovery secured by the latter, provided that the American patentee, at the time of making application for his patent, believed himself to be the first inventor or discoverer of the thing patented."

Similarly, in Schoerken v. Swift & Courtney & Beecher Manufacturing Co., C.C.S.D.N.Y., 7 F. 469, 471, it was stated that

"The expression 'patented,' in the statute, would seem, from the signification of the word, to mean only inventions laid open to the public and protected to the inventors, and such appears to be the construction which the expression has heretofore received."

Similar holdings were made in De Florez v. Raynolds, C.C.S.D.N.Y., 8 F. 434; Scovill Mfg. Co. v. Satler, D.C.D.Conn., 21 F.2d 630; Scovill Mfg. Co. v. Balistocky, D.C.E.D.Pa., 48 F.2d 875; and Carter Products, Inc., v. Colgate-Palmolive Company, D.C., 130 F.Supp. 557, the last three cases cited dealing with Belgian patents.

The decision principally relied on by the board and in the brief for the Commissioner is General Electric Co. v. Hygrade Sylvania Corp., D.C., 61 F.Supp. 476. In that case the date of the decree (brevet octroyé) of the Belgian patent involved was November 30, 1928, and the publication date was January 19, 1929. The plaintiff claimed that the earlier date was the effective date of the patent, while the defendant contended for the later date. The ruling of the court was simply "I think the plaintiff is right. See, Sirocco Engineering Co. v. B. F. Sturtevant Co., 2 Cir., 220 F. 137 and R. S. 4886."

The Sirocco case cited was not directly in point, since it involved a French patent which had not been printed, but of which certified copies were obtainable from the French patent office, whereas such copies of the Belgian application and grant could not be obtained prior to the date of publication. Moreover, the statement in the General Electric Co. case as to the effective date of the Belgian patent was dictum, since the court expressly found that either date was early enough to invalidate the United States patent involved. Under those circumstances, we are of the opinion that that case can not be accorded great weight as a precedent on the issue here.

The brief for the Commissioner also relies on Trico Products Corp. v. Delman Corp., 8 Cir., 180 F.2d 529, and Sun Rubber Co. v. National Latex Products Co., D.C., 148 F.Supp. 469. In the former case the holding of the court that an Italian patent was a reference as of its granting date was based on the ground that *prima facie* it was effective as of that date "in the absence of any evidence indicating that it was a secret patent." The inference seems clearly to be that if the patent had been shown to be a secret one it would not have been a proper reference.

While the Sun Rubber Co. case contains language indicating that an Italian patent is a proper reference prior to the date when it is made available to the public, that language appears to be dictum

since the patent was opened to public inspection more than a year prior to the filing date of the application on which the United States patent was granted.

Here, the brief for the Commissioner emphasizes that the patentee may obtain as many copies of the application and grant as he desires during the period between the grant and the opening to public inspection, but we do not consider that fact in itself significant. Any inventor has the option of disclosing his invention to the public at any time, but has he really done so and actually made it available to the public? There is nothing to show that, in the instant case, any copies of the papers were ordered or that any knowledge of the invention was imparted to the public prior to the "brevet publié" date of July 1, 1950. In our opinion the Belgian patent was, for all practical purposes, still a secret patent between March 31, 1950, and July 1, 1950.

It is also argued on behalf of the Commissioner that if patenting within the meaning of the statute is limited to patents which are open to the public, then a patent is merely a special form of printed publication, and the expression "patented or described in a printed publication" is redundant. That argument, however, overlooks the fact that there is nothing in the nature of a patent which requires it to be printed. In fact it agreed by appellant and the Patent Office that the Du Pont patent here was a patent on its "brevet publié" date of July 1, 1950, even though it was not printed at that time and was only open to inspection in typewritten form, a form which has been held not to be a printed publication. It is thus quite possible for a document to be a patent without also being a printed publication.

For the reasons given, we are of the opinion, both on principle and authority, that the word "patented" as used in 35 U.S.C. § 102(a) and (b) is limited to patents which are available to the public. Since the Belgian patent relied on was not so available prior to July 1, 1950, it did not become a patent until that date, within the meaning of those paragraphs, and hence is not properly available as a reference against appellant's application.

The decision of the Board of Appeals is accordingly reversed.

Reversed.