**In re Thomas Trefor HOWARTH.**

**Appeal No. 81–512.**

United States Court of Customs and Patent Appeals.

July 16, 1981.

**104**

Jacobs & Jacobs, New York City, for appellant.

Joseph F. Nakamura and Harris A. Pitlick, Washington, D. C., for the Patent and Trademark Office.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER, and NIES, Judges.

NIES, Judge.

This appeal is from the decision of the Patent and Trademark Office Board of Appeals (board) sustaining the rejection of all

claims of appellant's application Serial No. 620,564, filed October 8, 1975, under 35 U.S.C. § 112, first paragraph, for failure to disclose how to make or obtain the starting material requisite to the preparation of the claimed compounds. We affirm.

### Background

This application involves various derivatives of clavulanic acid.[1] Preparation of the derivatives is disclosed but no method is given for making the starting material, clavulanic acid, per se, nor is a source named.

In response to the examiner's rejection of the claims under 35 U.S.C. § 112, first paragraph, as based on a non-enabling disclosure, appellant argued that the preparation of clavulanic acid was known in the art prior to his U.S. filing date. In support of this assertion appellant submitted copies of patent specifications which had been opened for inspection in Rhodesia, Panama and Luxembourg prior to this date and which disclosed the preparation of the starting material, together with pertinent official publications in Rhodesia and Panama announcing acceptance of the applications in which the disclosure is contained.

In Rhodesia the typewritten specification had been filed April 11, 1975, and accepted September 8, 1975. A copy of a page of the Official Patent and Trademark Journal dated September 24, 1975, also submitted by appellant, showed that as of that date the specification entitled "Antibiotics" was open to the public for inspection and copies thereof could be obtained.[2]

In Panama the specification had been filed May 21, 1975, and the patent granted October 2, 1975. A copy of a page of the Bulletin of Industrial Property dated June 16, 1975 (in Spanish), advertising accept-

---

1. After filing, appellant sought to claim priority under 35 USC 119 based on a British application, filed October 22, 1974, in which both the claimed derivatives and the starting clavulanic acid are disclosed. In the U.S. application, however, there is only a reference to some unspecified "Patent Application Nos." for disclosure concerning clavulanic acid and the description of actually making the starting material is not carried forward. Since appellant

must first establish the sufficiency of his U.S. application as of the U.S. filing date before priority will be accorded his application, the filing date of his British application is not relevant at this juncture.

2. A three months opposition period commenced at this date prior to granting of the patent. The record shows the patent was not formalized until January 2, 1976.

ance of this application entitled "Antibioticos" was also submitted. This advertisement opened an opposition period of ninety days. Copies of the typewritten specification were obtainable at least as early as June 16, 1975.

In Luxembourg the specification had been filed April 18, 1975, and the patent granted August 20, 1975. The application was available for inspection and copies could be obtained after granting of the patent. Three international classification numbers appear on the copy of the specification which is entitled "Procede de preparation d'un antibiotique." There is nothing in the record showing how and when the public was apprised of the granting of the patent in Luxembourg.

Appellant is named as a co-inventor in the applications in Panama and Luxembourg, and Beecham Group Limited, the real party in interest here, is the assignee of all three.

## OPINION

35 U.S.C. § 112, first paragraph, requires that the specification in an application for a patent "contain a written description of the invention, and of the manner and process of making . . . it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make . . . the same . . . ."

There is no question here that access to or knowledge of preparation of the starting material, clavulanic acid, is essential to making the claimed *derivatives* of clavulanic acid. There is also no question that if a patent were granted on the invention as described in the present application, a person skilled in the art would find no information therein enabling him to prepare the clavulanic acid or directing him to reference materials containing such information.

Finally, there is no dispute that the necessary information could have been obtained from documents available to the public,

prior to the filing date of the subject application, in the Patent Offices of Rhodesia, Panama and Luxembourg. Apart from these documents, appellant does not assert that the preparation of clavulanic acid is part of the knowledge of the art.

Appellant makes essentially two arguments: first, that those skilled in the art are conclusively presumed to have knowledge of all information in all U.S. and foreign patents from the date when copies are made available to the public, and, second, that the particular information was accessible because public notices concerning the subject patents were published in Rhodesia and Panama and because international classifications were assigned in Luxembourg.

The solicitor does not admit that the submitted documents evidence that any "patents" had been granted prior to appellant's filing date.[3] The thrust of the solicitor's argument, however, is that regardless of what the documents are called and regardless of the technical possibility of obtaining copies from the respective government offices, there is no evidence of actual dissemination to the public of the documents containing the specifications, nor is there any index, catalog or other customary research tool or even a descriptive title that would lead one of ordinary skill to the documents for information on the preparation of clavulanic acid. Therefore, the documents may not be relied on to supplement appellant's disclosure.

■ The starting point under § 112 is that a duty is imposed which must be met by an applicant. In exchange for the patent, he must enable others to practice his invention. An inventor need not, however, explain every detail since he is speaking to those skilled in the art. What is conventional knowledge will be read into the disclosure. Accordingly, an applicant's duty to tell all that is necessary to make or use varies greatly depending upon the art to which the invention pertains.

---

3. Not every foreign document labelled a "patent" is a patent within the meaning of 35 U.S.C. § 102(a) or (b). *In re Ekenstam*, 45 CCPA 1022, 256 F.2d 321, 118 USPQ 349 (1958). Whether the documents here are sufficiently available to the public to qualify as patents under § 102 need not be determined at this time.

In *In re Chilowsky*, 43 CCPA 775, 780, 229 F.2d 457, 460, 108 USPQ 321, 324 (1956), this court stated:

It is well settled that the disclosure of an application embraces not only what is expressly set forth in words or drawings, but what would be understood by persons skilled in the art. As was said in *Webster Loom Co. v. Higgins et al.*, 105 U.S. 580, 586 [26 L.Ed. 1177], the applicant "may begin at the point where his invention begins, and describe what he has made that is new and what it replaces of the old. That which is common and well known is as if it were written out in the patent and delineated in the drawings." One of the issues in the present case relates to the scope and nature of the matters which may be sufficiently common and well known as to permit them to form an unwritten part of the disclosure of the application.

■ With respect to matters necessary for an enabling disclosure and which are not common or well known, an applicant may, in the interests of economy of time and space, incorporate certain types of documents by specific reference in his application to such source materials. After ruling that prior U.S. patents may be so incorporated, *In re Stauber*, 18 CCPA 774, 45 F.2d 661, 7 USPQ 258 (1930), this court extended the doctrine of incorporation by reference stating as a general guideline in *In re Heritage*, 37 CCPA 1109, 1115, 182 F.2d 639, 643, 86 USPQ 160, 164 (1950), that "any reference to a disclosure which is available to the public is permissible."

With this precedent in mind, we turn to the problem at hand.

What appellant seeks is to eliminate the need for incorporation by reference of source materials in his application. In appellant's view, information which is presumed within the knowledge of those skilled in the art must be read as an unwritten part of his disclosure. In support of his position appellant relies upon the uncontrovertible proposition that an issued U.S. patent is publicly available as of its issue date for everything contained therein and by analogy argues that the question here is simply whether the purported foreign "patents" were publicly available prior to the filing date of the subject application. Answering the question in the affirmative, appellant concludes that everything contained therein must also be deemed known in the art.

This analysis does not focus on the issue of whether the requirements of 35 U.S.C. § 112 have been met. Not everything that may be cited as prior art to preclude the grant of a patent in accordance with 35 U.S.C. § 102 can be equated with common knowledge for purposes of enablement under § 112. These provisions of the statute serve distinctly different purposes. Section 102 has as one objective that only the first inventor obtain a patent while § 112 seeks to obtain full value for the patent granted. Foreign "patents" and foreign "printed publications" preclude the grant of a patent whether or not the information is commonly known. Under § 102 a conclusive presumption of knowledge of such prior art is, in effect, a statutorily required fiction. Such a presumption cannot be found in § 112.

■ To supplement a specification which on its face appears deficient under § 112, evidence must establish that the information which must be read into the specification to make it complete is known to those having ordinary skill in the art. We do recognize that part of the skills of such persons includes not only basic knowledge of the particular art to which the invention pertains but also the knowledge of where to search out information. Well known text books in English are obvious research materials. Similarly, public records concerning U.S. patents are likely to be checked, and information therein is reasonably accessible in view of the published abstracts and our classification system. Thus, U.S. patents are considered pertinent evidence of what is likely to be known by persons of ordinary skill in the art.[4] We do not exclude the

4. *In re Eynde*, 480 F.2d 1364, 178 USPQ 470 (Cust.& Pat.App.1978); *In re Budnick*, 537 F.2d 535, 190 USPQ 422 (Cust.& Pat.App.1976).

possibility that foreign patents and foreign language printed publications may also be relevant to the inquiry of what is likely to be known, but we do not ipso facto give all patents and printed publications the same evidentiary weight for purposes of showing enablement under § 112, even though all such references are treated the same for prior art purposes under § 102.

■ When an applicant seeks to add necessary information to a specification by incorporating a source for the information by reference, public accessibility of that source alone may be the controlling factor. On the other hand, when no guide at all has been given, as here, an applicant must show that anyone skilled in the art would have actually possessed the requisite knowledge (*In re Lange*, 644 F.2d 856, 863, 209 USPQ 288, 294 (Cust.& Pat.App.1981)) or would reasonably be expected to check the source which the applicant relies upon to complete his disclosure and would be able to locate the information with no more than reasonable diligence. An applicant has not provided a sufficient disclosure if another can practice the invention only after perusing specifications of applications or patents in all foreign countries in the relevant class or classes. Here, nothing in appellant's U.S. specification narrows the search to Rhodesia, Panama, or Luxembourg, and even had that much help been provided, no research aid has been shown to exist to lead one to particular documents. Appellant's personal knowledge of the existence of these commonly owned applications, and the informa-

tion contained therein, cannot be imputed to others. Therefore, we do not see any basis for concluding that the source of information for the production of clavulanic acid is so likely to be within the knowledge of persons skilled in the art that appellant need say nothing about this essential part of practicing his invention in his application.

■ Appellant argues that in fairness all documents actually available should be read into disclosures; otherwise, an applicant runs a great risk if he leaves anything out of his application. This is a risk an applicant must face under the disclosure requirements of § 112. If he chooses to rely upon general knowledge in the art to render his disclosure enabling, then the burden rests upon him to establish that those of *ordinary* skill in the art can be expected to possess or know where to obtain this knowledge. To avoid the risk, he need only set forth the information in his specification or incorporate it by reference to a reasonably accessible source. Appellant has failed to satisfy either alternative and the rejection under § 112 must be *affirmed.*

AFFIRMED.

These cases do not support the broader premise of appellant that all information, no matter how obscurely presented, in a U.S. pat-

ent may be relied on under § 112 as inherently supplementing one's disclosure.