## Case No. 1,957.

### BROOKS et al. v. NORCROSS et al.

[2 Fish. Pat. Cas. 661.] [1]

Circuit Court, D. Massachusetts. Oct., 1851.

PATENTS—INFRINGEMENT—SUIT TO ENJOIN—SENDING ISSUE TO JURY — "PATENTED ABROAD" — FOREIGN PATENT—EVIDENCE — COMBINATION — EQUIVALENTS.

1. The allowance of a jury to settle at law the question of infringement arising in a suit in equity, is not a right, but is a matter in the sound discretion of the court; a discretion to be regulated by sound reasons. The chief test is, whether the chancery court entertains any reasonable doubt as to the law or fact, and wants them ascertained for its aid; and if a trial at law is ordered, to remove doubts or settle contested rights before a final decision in equity, the latter court will still often issue the temporary injunction, founded on long possession of the patent, or other prima facie evidence, until a decision is had at law. There is much less reason in the United States tribunals than in England for sending questions arising in patent cases to a court of law, because the judge is the same in both courts.

[See Watt v. Starke, 101 U. S. 247; Allen v. Sprague. Case No. 238; Brooks v. Bicknell, Id. 1,944; Poppenhusen v. Falke, Id. 11,279; Ely v. Monson & B. Manuf'g Co., Id. 4,431; Cochrane v. Deener, 94 U. S. 781; Van Hook v. Pendleton, Case No. 16,851.]

2. When the facts in the case are examined, if the conscience of the court is in such doubt as to need the verdict and advice of the jury on any particular fact, it will obtain it for its own aid; but it can not be on account of a request by a party, or on the whole question of infringement, involving law as well as fact; or of the validity of plaintiff's patent under every objection which may be urged against it by ingenuity and research.

3. The very object of allowing a bill for an injunction in patent cases is to avoid the expense and delay of a multiplicity of suits.

4. By the words "patented abroad," as used in sections 7 and 15 of the act of 1836 [5 Stat. 119], is of course meant, covered and made known to the world by a public patent, so as to bring home to the public a knowledge of its existence.

5. It appearing that in France private as well as public patents were granted—Held, that the defendant must show whether the patent was a public or a private grant.

6. Although copies of the specifications and drawings may be put in evidence, yet, without the patent itself, the proof required by law that they were in truth patented, is defective.

7. A part of a machine may perform two functions, one, for instance, of a pressure roller

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

and one of a bed or rest, and thus all the parts of the patented combination may be virtually used, although one part is not nominally retained, but its office is performed by something else, under a different name.

[8. Cited in Ireson v. Pierce, 39 Fed. 798, to the point that an English patent does not exist, as a patent for uses under sections 4886, 4920, and 4923, Rev. St., until the enrollment or sealing of the complete specification, at which time the English patent becomes open to the public.]

This was a bill in equity, filed [by Artemus L. Brooks, James G. Wilson, and others] to restrain the infringement [by Nicholas G. Norcross and others] of letters patent granted to William Woodworth, for an "improvement in the method of planing, etc.," more particularly referred to in the report of the case of Foss v. Herbert [Case No. 4,957]. [Application to direct the trial of the question of infringement by a jury denied.]

C. L. Woodbury and C. M. Keller, for complainants.

S. Bartlett and F. Giles, for defendants.

WOODBURY, Circuit Justice. It is requested, as a preliminary favor or right, that the question of infringement in this case be tried by a jury. I am not aware of any trial of that kind which is allowed in any way in chancery, as a matter of right to a party, unless it be in case of a bill in chancery to abate a nuisance, which is of a public character, and which some individual claims to injure himself specially. There, if the nuisance be denied, courts will usually decline to sustain a private complaint to abate it; if the question of nuisance be not first settled at law and by a jury. Irwin v. Dixion, 9 How. [50 U. S.] 10, and in cases cited there.

Such is not the class to which the present case belongs. Another set of instances, where a jury is ordered in chancery, is to try particular facts, and not to settle at law a question of right. It is, too, with a view to settle facts, on which the court feels doubt, and itself wishes the aid of a jury to do it, and not where the party applies for a jury either as a right or favor. This is the most numerous class of cases, where a jury is used. McLaughlin v. Bank of Potomac, 7 How. [48 U. S.] 227; 3 Story, 746 [Allen v. Blunt, Case No. 216].

In the argument of counsel, it seems to be conceded that the allowance of a jury to settle at law the question of infringement, is regarded not as a right, but a matter in the sound discretion of the court. This, too, is the adjudged law in instances of that character. Pierpont v. Fowle [Case No. 11,-152]; Saunders v. Smith, 3 Mylne & C. 735; Jac. 311.

But this discretion must, of course, be regulated by sound reasons. And though an English chancellor has said he remembered no case where the trial at law was refused

when wished, it is certain there have been many.

The chief test is, whether the chancery court entertains any reasonable doubt as to the law or fact, and wants them ascertained for its aid. Curt. Pat. 383; Webst. Pat. Cas. 473. And if a trial is ordered at law, to remove doubts or settle contested rights, before a final decision in chancery, the latter court will still often issue the temporary injunction, founded on long possession of the patent, or other prima facie evidence, till a decision is had at law. Id. 730; Curt. Pat. 381; 14 Ves. 130; 3 Mer. 622.

Most of the patent cases where the court has deemed it proper to dissolve an injunction, or refuse one till the parties' rights are settled at law, are those where the defendant denies the plaintiff's right in his answer; and the recoveries against other persons, and numerous sales and long possession have not been such as to raise a strong presumption that the patent is valid. Orr v. Littlefield [Case No. 10,590]; Woodworth v. Edwards [Case No. 18,014], and cases there cited; 2 Eden, 137; Curt. Pat. 339; Webst. Pat. Cas. 472; Hind. Pat. 30–37.

But here, the Woodworth patent, as to its validity, has been tried again and again at law, and besides the request is not for a jury here as to the patent right of the plaintiff, and its validity, but as to the infringement.

In most of the cases cited, and which belong to this head, the patent disputed had not been before tried at law as has Woodworth's original, and also his amended patent; and like his had not been repeatedly sold; and sustained in courts, and long possessed. Totally the reverse of all this, as in Baskett v. Cunningham, 2 Eden, 138, so strongly relied on as to allowing a trial at law.

In the exercise of the discretion, also, which it is conceded and shown by the cases before, must be exercised here in sending an issue, as to rights to be tried at law, this court has already adjudged, in respect to a copyright, it will not send one, where the facts are agreed, and the same judge sits to settle the legal rights at law as in equity. Pierpont v. Fowle [supra].

There is, on account of the judge being the same for the equity and the law hearings, much less reason than in England, for our sending such questions to a court of law in the United States tribunals.

Again, how could a judge, in the exercise of that discretion, send an issue to be settled at law which he had before examined and settled, both at law and in equity, as, for instance, the validity of Woodworth's original patent, as well as of his amended one in 1845?

But the defendants seem to wish a trial at law, more of their own patent and rights than the plaintiffs'. They set up as one ground of defense that the machine, now used by them, was invented by Norcross himself, and is substantially different from the Woodworth machine, and hence that the use of it is not an infringement on the plaintiffs' right.

And it may be inferred that this ground of defense is the matter desired to be tried by a jury. If so, the application relating to the defendants' right set up, and not the plaintiffs', is not countenanced by the precedents generally, and conflicts with the usual course in chancery as to new matter in defenses, rather than old rights claimed and sought to be enforced by the plaintiff. Though very agreeable to most courts in equity, to be relieved from deciding on all questions of fact, whether offered in defense or in the bill, yet one of their most arduous and daily duties is to decide them; and if they decline to do it, unless in ordinary and adjudged excepted cases, they decline to do what neither the legislature nor the law in chancery has excused them from the responsibility of doing. They have no more power to decline this responsibility merely because a party requests it, or from timidity as to consequences, or a willingness to avoid labor, than to decline any other duty imposed on them by law.

When they do or may use a jury in chancery, as in the other cases before enumerated, then they have the law so settled previously for their vindication; but if they do it in other cases, however desirable to a party or the court itself, they have not the sanction of law and do not only wrong to that, but to the other parties in the case who oppose the request.

When the facts in this case are examined, if the conscience of the court is in such doubt as to need the verdict and advice of the jury on any particular fact, I shall be most happy to obtain it for my own aid; but it can not be on account of a request by a party or on a whole question of infringement, involving law as well as fact, and an invention or not of a new and different machine by the defendants; or of this and the validity of the plaintiff's patent under every objection which may be urged against it by ingenuity and research. The very object of allowing a bill for an injunction in this class of cases, is to avoid the expense and delay of a multiplicity of suits. 2 Atk. 483; 1 Spence, Eq. Jur. 658.

In respect to the French machines, relied on as similar to and earlier than Woodworth's, the date of their supposed invention is early enough to overreach Woodworth's, one having been in 1817, and amended in 1818, and the other in 1825. But no evidence is given of the practical and beneficial use of either before 1828, the date of Woodworth's.

The defendants then rely solely on their close similitude to Woodworth's, and their having been "patented" before, in order to

enable them, under the act of congress of 1836 [5 Stat. 119], to deprive Woodworth of the merit of originality.

But were these two French inventions ever "patented," within the meaning of that word in the act of congress? Act of July 4, 1836.

The word there is first applied in connection with the original issue of a patent, prohibiting it to be done by the commissioner if the invention has before been "patented" abroad. Section 7. It is next used in connection with the defense to a patent: declaring the defense good if the invention has before been "patented" abroad. Section 15.

The word "patented" as here used, must of course mean covered and made known to the world by a public patent, so as to bring home to the public, generally and probably, a knowledge of its existence, and deprive any one of the credit and protection of being original, if he afterward construct a like machine. It is impossible, too, generally, that when the letters are applied for to a commissioner here, that he could stop them, because before patented, unless public.

But in the French system of patents at that time, there existed private as well as public patents, and, for aught which appears, there may have been till after 1828, patents of the former character, and consequently not coming within the spirit or ordinary meaning of the word "patented," as used here, in the act of 1836, to describe what is open and should be known to the community.

There is some probability that they were, in fact, private, as no evidence is offered of their general use in France, either before or since.

The object of having some of their patents private was to prevent what is imputed here to Woodworth, the knowledge of the valuable inventions in France, and their being obtained by "strangers" and "vagabonds" and carried elsewhere. Reynault, Pat. Law, 150 and 113.

They are sometimes made secret by the decision of the assembly, and sometimes by the secretary of the interior, from commercial or political reasons.

This vital fact, whether private or public, ought to be made to appear by the defendant as he sets up the patent as if coming within the word "patented" as used in our own law, when nothing can be within the spirit of that law except what is public and thus known, open and hence imitable, and no other being in use here, such being the design and principle in all objections of this class, and the analogous classes, the patents must have been used publicly, if used before; a description of them printed publicly, if printed before; an invention of them been made public, if made before, and "patented" of course publicly, if any way, before. Webst. Pat. Cas. 592.

Again, copies are given in evidence of the specifications and drawings of both of those machines; but none of the patent itself, in either, and without the latter, the proof required by law that they were in truth patented, is defective, though the probability is that they were patented in some way.

A copy of the patent itself has been omitted by accident, or because it would disclose the fact of the patent being private.

The French laws at that time required also a publication of the patent for a certain length of time in the bulletin of the laws, in order to make it valid. But no evidence of such publication in either of these cases is attempted here. Reynault, Pat. Law, 137; Perp. Pat. in 4 Law Lib. c. 51.

Indeed, they do not appear to have been published any where or in any way till 1832, at least three or four years after Woodworth's invention.

The French machines must, therefore, be considered as not coming within the requirements of our laws.

But there is another view of this point, and another act of congress, bearing on it which strengthens this conclusion.

By the act of March 3, 1839 [5 Stat. 354], it is provided: "That no person shall be debarred from receiving a patent for any invention or discovery, as provided in the act approved on the fourth of July, one thousand eight hundred and thirty-six, to which this is additional, by reason of the same having been patented in a foreign country more than six months prior to his application. Provided, that the same shall not have been introduced into public and common use in the United States, prior to the application for such patent." Now, this, in words, applies to what has been "patented in a foreign country," and describes what is to prevent an issue of letters here. But patented abroad means the same thing in the defense as in the issue of letters. And if in the latter it must, if over six months earlier, have also been introduced into use in this country. So should it in the former. The reason is the same, and the policy is the same; and though the act only specifies patented in its provision in the case of the issue of letters, it must mean patented wherever the word is used, or be entirely deficient, destitute of equality, and a casus omissus, probably by sheer accident. There is no pretense on the evidence that either of these French machines were ever published or used here at all, before Woodworth's patent.

A piece in a machine may perform two functions, one, for instance, of a pressure roller, and one of a bed or rest, and, if thus all parts of Woodworth's combination are virtually used, it is no excuse to say one part is not nominally retained, but its office is performed by something else under a different name. It is not, then, true that only a part of the combination is used; and therefore the patent of Woodworth as a whole is

not violated. 1 Mason, 447, 474 [Barrett v. Hall, Case No. 1,047]; Webst. Pat. Cas. 225.

[NOTE. For other cases involving this patent, see note to Bicknell v. Todd, Case No. 1,389.]