### Application of Harry MONKS.

### Appeal No. 78–603.

United States Court of Customs and Patent Appeals.

Dec. 7, 1978.

Harold C. Wegner, Arlington, Va., atty. of record, for appellant; William A. Knoeller, Charles A. Wendel, Wayne W. Herrington, Arlington, Va. (Stevens, Davis, Miller & Mosher, Arlington, Va.), of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Jere W. Sears, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE, and MILLER, Judges.

LANE, Judge.

This is an appeal from the decision of the United States Patent and Trademark Office (PTO) Board of Appeals (board) sustaining the examiner's rejection under 35 U.S.C. § 102(d) of claims 14–25 of application serial No. 561,291, filed March 24, 1975, for "Conveyor Drives," a continuation of application serial No. 350,785, filed April 13, 1973. We reverse.

### Background

A counterpart British patent application, with claims directed to the same invention as the claims before us, was filed in Great Britain by appellant's assigns on July 21, 1970, more than twelve months before appellant filed in the United States, on April 13, 1973. The British complete specification was published on April 11, 1973 (i. e., before the U. S. filing date). However, the British

patent was not sealed until August 8, 1973 (i. e., after the U. S. filing date).

The claims on appeal have been rejected under 35 U.S.C. § 102(d) which provides:

§ 102. *Conditions for patentability; novelty and loss of right to patent*

A person shall be entitled to a patent. unless— ·

\*     \*     \*     \*     \*     \*

(d) the invention was first *patented* or caused to be patented, or was the subject of an inventor's certificate, by the applicant or his legal representatives or assigns *in a foreign country* prior to the date of the application for patent in this country on an application for patent or inventor's certificate filed more than twelve months *before the filing of the application* in the United States, . .. [Emphasis added.]

In other words, where a corresponding foreign application was filed more than twelve months before the filing of the application in the United States, § 102(d) bars the granting of a United States patent if the invention was also "patented . . . in (that) foreign country" before the United States filing date.

This appeal raises the question: When is an invention "patented" in Great Britain under § 102(d)? Under British patent law, the patentee gets the right to sue for infringement when the patent is sealed. However, damages for infringement are backdated to the date of publication of the complete specification. Relying on a prior PTO decision involving a similar Japanese law, *Ex parte Iizuka,* 171 USPQ 50 (Bd. App.1970), the board held that an invention is "patented" in Great Britain on the date the complete specification is published. Since the British counterpart was published on April 11, 1973, two days before the U. S. filing date, appellant's claims were rejected under § 102(d).

## OPINION

The sole issue before us in this appeal is whether an invention is patented in Great Britain under 35 U.S.C. § 102(d) on the date the complete specification is published or on the date when the patent is sealed.

At the outset, we note that we are not here to determine the meaning of the term "patented" in the abstract, rather we must focus on what Congress intended the term to mean when it used it in the 1952 Patent Act. The best evidence of this is the legislative history of the Act. H.R.Rep. No. 1923, 82d Cong., 2d Sess. 17 (1952), the report from the House of Representatives Committee on the Judiciary accompanying H.R. 7794, explained with regard to § 102(d):

The section has been changed so that the prior foreign patent is not a bar unless *it was granted* before the *filing of the application* in the United States. [Emphasis added.]

Identical language was used in S.Rep. No. 1979, 82d Cong., 2d Sess. 17 (1952), U.S.Code Cong. & Admin.News 1952, pp. 2394, 2410, the report from the Senate Committee on the Judiciary accompanying the bill. In the Patent Law Codification and Revision: Hearings on H.R. 3760 Before Subcomm. No. 3 of the House Comm. on the Judiciary, 82d Cong., 1st Sess. 44 (1951), the Laws and Rules Committee of the American Patent Law Association reported to Congress that:

Section 102, paragraph (d) makes a desirable change from existing law in permitting the issue of a corresponding foreign patent before the *issue of the United States patent* in those cases where the United States application is filed outside the Convention, but before *issue* of the foreign patent. [Emphasis added.]

The State Department indicated its understanding of § 102(d) in a letter to the subcommittee supporting the revision:

Under the new provision a patent may, nonetheless, be secured provided the *application is filed* in the United States prior to *issuance* of a patent in a foreign country. [Id. at 90–91. Emphasis added.]

Thus, we see that Congress understood the phrase "patented . . . in a foreign country" to mean the *granting* or *issuance* of a patent in a foreign country.

These words suggest a formal bestowal of patent rights from the sovereign to the applicant such as that which occurs when a British patent is sealed.

Further evidence of what Congress intended the phrase "patented . . . in a foreign country" to mean can be found by comparing § 102(d) to other sections of the 1952 Patent Act. The phrase "patented . . . in . . . a foreign country" also occurs in § 102(a) and § 102(b):

> § 102. Conditions for patentability; novelty and loss of right to patent
>
> A person shall be entitled to a patent unless—
>
> (a) the invention was known or used by others in this country, or *patented* or described in a printed publication *in* this or *a foreign country*, before the invention thereof by the applicant for patent, or
>
> (b) the invention was *patented* or described in a printed publication *in* this or *a foreign country* or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or [Emphasis added.]

While enactment of § 102(d) constituted a substantive change in the law,* no changes were made with regard to § 102(a) and (b) and their predecessor, United States Revised Statute § 4886, 35 U.S.C. § 31 (1946 ed.), other than their division into lettered paragraphs. H.R.Rep. No. 1923, 82d Cong., 2d Sess. 17 (1952). The old statute provided:

> § 31. Inventions patentable.
>
> Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof, or who has invented or discovered and asexually reproduced any distinct and new variety of plant, other than a tuber-propagated plant, not known or used by others in this country, before his invention or discovery thereof, and not

*patented* or described in any printed publication *in* this or *any foreign country*, before his invention or discovery thereof, or more than one year prior to his application, and not in public use or on sale in this country for more than one year prior to his application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law, and other due proceeding had, obtain a patent therefor. [Emphasis added.]

The judicial, administrative, and textbook authorities had uniformly interpreted the phrase, "patented . . . in . . . any foreign country," as it is used in the old statute to mean, with regard to Great Britain, that an invention was patented on the date the patent was sealed. See *Ex parte Iizuka*, supra at 54–55 (Roeming, Examiner-in-Chief, dissenting). Since there is no indication that Congress intended to enact a new definition of "patented . . . in a foreign country," we must infer that this phrase is to be interpreted as it always had been prior to the 1952 Patent Act.

The solicitor argues that a distinction should be drawn between § 102(d) and § 102(a) and (b) because the former relates to foreign patents of the applicant, whereas the latter relates to foreign patents of others. We find this argument unpersuasive for two reasons. First, there is no basis in the Act or its legislative history for making such a distinction. The statute uses the identical phrase, "patented . . . in a foreign country," in each of these sections. Nowhere in the legislative history is there the slightest suggestion that these same phrases be interpreted differently. Second, the distinction makes no sense from a policy standpoint. Why would Congress have wanted the rule to be harsher for determining whether applications were filed in time under § 102(d) than for determining whether applications were filed in time under § 102(b) or whether the invention had been anticipated by the work of another under § 102(a)? This would have been contrary to

---

* The change was that prior to the 1952 Act the U. S. *patent* had to issue before the foreign patent, whereas under the 1952 Act it suffices that the U. S. *application was filed* before the foreign patent issued, in the case of non-Convention U. S. applications, those filed more than one year after the first-filed foreign application on the same invention.

the purpose behind the enactment of § 102(d), a liberalization of the law with regard to the bar based on applicant's or his assign's own foreign patents. S.Rep. No. 1979, 82d Cong., 2d Sess. 5 (1952).

In reaching its result, the board relied heavily on the specific wording of Section 13, subparagraph (4), of the British Patent Act (1949), which provides:

(4) After the date of the publication of a complete specification and until the sealing of a patent in respect thereof, the applicant shall have *the like privileges and rights as if a patent for the invention had been sealed* on the date of the publication of the complete specification:

· Provided that an applicant shall not be entitled to institute any proceedings for infringement until the patent has been sealed. [Emphasis added.]

However, such language is not a new feature of Great Britain's patent laws. British law gave an applicant, upon the acceptance of the complete specification, the *"like privileges and rights as if a patent for the invention had been sealed"* [emphasis added] at least as far back as 1898. See *Marconi Wireless Telegraph Co. v. United States*, 81 Ct.Cl. 671, 27 USPQ 234 (1935), *modified*, 320 U.S. 1, 63 S.Ct. 1393, 87 L.Ed. 1731, 57 USPQ 471 (1943). The Court of Claims in *Marconi* was fully aware of this language, but, nonetheless, concluded that an invention was patented in Great Britain on the date the patent was sealed. Although the *Marconi* court was considering the effect of a different pre-sealing right, the right to mark goods with the word "patented," its

reasoning is just as applicable to the case at bar involving the pre-sealing right of back-dated damages. The court explained:

In Great Britain, while the rights of a patentee date back to the time when the completed specifications are filed, his rights do not become fixed and settled until the patent is "sealed." The specifications may be sufficient and approved but if the patent is not "sealed" he receives no certificate that a patent has been granted and no rights accrue to him as a patentee. We think, therefore, that the word "patented" as used in the statute refers to the time when plaintiff's right to a patent is fixed and determined and this in Great Britain would be the date when it is "sealed." [81 Ct.Cl. at 753, 27 USPQ at 240.]

Since there is no basis for concluding that Congress intended to change the meaning of the phrase "patented in a foreign country" when it revised the patent laws in 1952, we must assume that Congress ratified and re-enacted into law the prior judicial interpretations of this phrase.

Accordingly, for the reasons set forth herein, the decision of the board is *reversed*.

*REVERSED.*