### In re Bradley C. CARLSON.

#### No. 92–1248.

United States Court of Appeals, Federal Circuit.

Dec. 16, 1992.

As Revised on Petition for Rehearing Feb. 1, 1993.

Malcolm L. Moore, Moore & Hansen, of Minneapolis, Minn., argued for appellant. With him on the brief was Chad A. Klingbeil.

Jameson Lee, Associate Sol., Office of the Sol., of Arlington, Va., argued for appellee. With him on the brief was Fred E. McKelvey, Sol. Of counsel were John W. Dewhirst, Richard E. Schafer, Albin F. Drost and Lee E. Barrett.

Before NIES, Chief Judge, LOURIE and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

Bradley C. Carlson appeals from the January 9, 1992 decision of the U.S. Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (Board), Appeal No. 91–2823, affirming the examiner's rejection in reexamination proceeding No. 90/001,935 of the claim of U.S. Design Patent No. 289,855 (Des. 289,855) as unpatentable under 35 U.S.C. § 103 (1988). We affirm.

I

The two issues raised in this appeal are whether the design protected by a German Geschmacksmuster constitutes an "invention ... patented ... in ... a foreign country" within the meaning of 35 U.S.C. § 102(a) (1988) and thus may be considered prior art, and whether Des. 289,855 is unpatentable under 35 U.S.C. § 103 (1988) as obvious in light of the pertinent prior art.

The application that culminated in issuance of Des. 289,855 on May 19, 1987 was filed with the PTO by Carlson on November 19, 1984. The claim of Des. 289,855 covers the ornamental design for a dual compartment bottle as depicted in the six figures included in the design patent.

On April 6, 1990, the PTO granted a request for reexamination of Des. 289,855 filed by Revlon, Inc. and Smiletote, Inc., whom Carlson had accused of infringing Des. 289,855. During the reexamination, several references were considered which had not been before the examiner during prosecution of the initial application. The new references were (i) German Geschmacksmuster No. 4244, issued to Firma Frankenwald–Presserei Horst Rebhan on May 9, 1984; (ii) U.S. Design Patent No. 86,749, issued to Salvatore Scuito on April 12, 1932, and entitled "Design for a Combined Flask and Drinking Glass Holder" (Scuito); and (iii) a magazine article entitled "News in Packaging," *Drug & Cosmetic Industry* (July 1978) (Redken article), illustrating the type of bottle cap used in Des. 289,855.

A Geschmacksmuster is a design registration obtained by an applicant from the German government after performing certain registration procedures. Professor Chisum, in a nutshell, thus describes the registration process in effect in 1984:

> [A] person may register an industrial design or model by depositing with a local office an application with a drawing, photograph or sample of the article. Registration is effective on deposit, and lists of registered designs are published a short time after registration.

1 Donald S. Chisum, *Patents* § 3.06[2], at 3–107 (1992) (footnote omitted). The local office of deposit of a Geschmacksmuster in a city is the Amtsgericht, which is the local courthouse or seat of government of that city. The published list, which discloses certain particulars of each registration, is contained within the Bundesanzeiger, or Federal Gazette. The information typically disclosed in the Bundesanzeiger, with respect to a registered design, consists of a general description of the deposited design and the class of articles deposited, identifying numbers of the deposited designs, the name and location of the registrant, the date and time of registration, and the term of protection. In addition, the city location of the deposited design is also known because the published list is organized under city headings.

Certified copies of Geschmacksmuster are available from the Amtsgericht in which the registered designs are deposited. Such copies typically include the same information regarding the Geschmacksmuster as provided in the Bundesanzeiger, *supra*, including the city of deposit, and a copy of the drawing or photograph deposited. In the case of deposited sample articles, certified copies of Geschmacksmuster contain photographs of the sample articles.

The Geschmacksmuster in this case embraces three different bottle designs, Nos. 3168–3170. Only Model No. 3168 is pertinent to the design claimed in Des. 289,855. That model is a bottle design consisting of two attached container portions divided by a striking, asymmetrical zig-zag line of demarcation. Each container portion has an externally threaded neck with an associated screw-on cap. As translated, both the Bundesanzeiger publication referring to the Geschmacksmuster and the certified copy of the Geschmacksmuster state, in relevant part: "An open package with plastic or synthetic bottles with stoppers. . . . Model for plastic products." The description as "open" signifies that the deposited materials are available for public inspection. In addition, the certified copy of the Geschmacksmuster, which was supplied to the examiner as relevant prior art, includes a series of photographs of the three deposited designs taken from various orientations. The Bundesanzeiger identifies the German city of Coburg, Bavaria as the location of the registered design.

Scuito depicts an ornamental design for a combined flask and drinking glass holder. The flask and drinking glass are adjacent to one another and within a smooth-walled holder with a flat, oval base and smooth, plain walls equal in height to the body

portions of the flask and glass. Both designs incorporate threaded portions on the receptacles' extremities, presumably to facilitate capping. The overall design disclosed by Scuito, however, is asymmetrical in that the necks of the adjacent receptacles are of different heights.

The final reference in the prior art, the Redken article, illustrates the type of bottle cap used by Carlson in his bottle design, and demonstrates the cap's existence in the art prior to the date of Carlson's invention.

## II

Upon reexamination, the examiner rejected Carlson's argument that the Geschmacksmuster should not qualify as prior art under section 102(a), and found that the design protected by Des. 289,855 would have been obvious under section 103. Because the Geschmacksmuster was issued less than twelve months prior to the date of Carlson's application, 35 U.S.C. § 102(b) (1988) is inapplicable.

On appeal, the Board cited as its guide and authority *In re Talbott*, 443 F.2d 1397, 170 USPQ 281, 58 C.C.P.A. 1374 (1971) (German Geschmacksmuster constitutes a "foreign patent" for purposes of 35 U.S.C. § 102(d) (1988)), and *In re Monks*, 588 F.2d 308, 200 USPQ 129 (CCPA 1978) (no reason to distinguish between sections 102(a) and 102(d) in determining what constitutes a "foreign patent"). Based on those cases, the Board concluded that a Geschmacksmuster constitutes a patent for purposes of section 102(a). Consequently, the Board held that the Geschmacksmuster was pertinent prior art, and affirmed the examiner's conclusion that Des. 289,855 would have been obvious over the Geschmacksmuster in light of Scuito and the Redken article. Carlson timely appealed the Board's decision to this court.

## III

■ Interpretation of statutory terms is a question of law which this court reviews *de novo*. *Midwest Plastic Fabricators, Inc. v. Underwriters Labs. Inc.*, 906 F.2d 1568, 1572, 15 USPQ2d 1359, 1362 (Fed.Cir.

1990); *Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1100 (Fed.Cir.1990).

Assuming no other bar to patentability, a person is entitled to a patent under U.S. law unless the same invention was patented by another person in a foreign country prior to the invention thereof by the U.S. applicant. 35 U.S.C. § 102(a) (1988). The potential bar thus created by the existence of a patent issued in a foreign country gives rise to the availability of such a foreign patent as a prior art reference for the purpose of determining the validity of the claims in a U.S. patent or pending patent application. *See Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 695, 218 USPQ 865, 867 (Fed.Cir.1983), *cert. denied*, 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173, 224 USPQ 520 (1984); *In re Zimmer*, 387 F.2d 990, 991, 156 USPQ 252, 253, 55 C.C.P.A. 817 (1968).

A further bar to patentability arises if an applicant for a U.S. patent has been granted a patent in a foreign country on the same invention more than twelve months prior to the date the patent application is filed in the United States. 35 U.S.C. § 102(d) (1988).

The precise words of section 102 read, in pertinent part:

A person shall be entitled to a patent unless—

(a) the invention was ... patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

. . . . .

(d) the invention was first patented ... by the applicant ... in a foreign country prior to the date of the application for patent in this country on an application for patent ... filed more than twelve months before the filing of the application in the United States....

35 U.S.C. § 102 (1988). With respect to design patents, however, Congress has provided that the time bar in section 102(d) is six months. 35 U.S.C. § 172 (1988).

In *In re Talbott*, our predecessor court decided, as a matter of first impression, that a design protected by a Gesch-

**1036**

macksmuster qualifies under section 102(d) as an invention patented in a foreign country for purposes of applying the statutory time bar against an application for a U.S. design patent covering the same subject matter. 443 F.2d at 1398–99, 170 USPQ at 282. The court rejected the argument that a Geschmacksmuster should not be deemed to fall within section 102(d) because the copyright nature of the rights protected by the Geschmacksmuster is substantially different from the rights inherent in a U.S. design patent. *Id.*, 443 F.2d at 1398–99, 170 USPQ at 281–82. This rejection was based on reasoning adopted in the case by the Board, which in turn relied upon the opinion of Examiner–in–Chief P.J. Federico in *Ex Parte Weiss,* 159 USPQ 122 (Pat.Off. Bd.App.1967). With regard to construing "patented … in a foreign country" under section 102(d), Federico concluded that the rights and privileges attaching to the protection granted by foreign governments need not be coextensive with the exclusive rights granted under U.S. law, so long as the foreign rights granted are both substantial and exclusive in nature. *Id.* at 123–24. *Cf. In re Howarth,* 654 F.2d 103, 105 n. 3, 210 USPQ 689, 690 n. 3 (CCPA 1981) ("Not every foreign document labelled a 'patent' is a patent within the meaning of 35 U.S.C. § 102(a) or (b)." (citing *In re Ekenstam,* 256 F.2d 321, 323, 118 USPQ 349, 351, 45 C.C.P.A. 1022 (1958))). Because a Geschmacksmuster conveys substantial and exclusive rights in the design, the Board in *Weiss* held that a Geschmacksmuster qualifies as prior art under section 102(d). 159 USPQ at 124. The court in *Talbott* expressly "adopt[ed] as our own, the reasoning set out so completely in [*Weiss*]." 443 F.2d at 1399, 170 USPQ at 282.

Our predecessor court also had occasion to consider whether the phrase "patented … in … a foreign country," as used in section 102(a), should have a different meaning from the same language used in section 102(d). The issue arose in *In re Monks,* a case concerned with the bar to patentability under section 102(d). The Solicitor contended that the date upon which an invention is patented in a foreign country should differ for the purposes of section 102(a) versus section 102(d). At stake was whether the British patent date should be the date the patent finally issued, or an earlier date when the contents of the patent were initially published. 588 F.2d at 309, 200 USPQ at 130. Emphasizing that section 102(d) relates to foreign patents of the U.S. applicant (of which the U.S. applicant must necessarily be aware), whereas section 102(a) relates to foreign patents of others, the Solicitor argued that the foreign patent date under section 102(d) could properly precede the like date under section 102(a). The court refused to draw such a distinction:

> First, there is no basis in the [Patent] Act or its legislative history for making such a distinction. The statute uses the identical phrase, "patented … in a foreign country," in each of these sections. Nowhere in the legislative history is there the slightest suggestion that these same phrases be interpreted differently.

*Id.* at 310, 200 USPQ at 131. Although this observation was made with respect to the date on which a foreign patent becomes "patented" within the meaning of section 102(d), the language applies equally as well to the present issue of whether a distinction should be drawn between subsections (a) and (d) of section 102 when considering whether a Geschmacksmuster is a foreign patent citable as prior art in a section 103 analysis.

## IV

Whether a Geschmacksmuster is a foreign patent under section 102(a) is a question of first impression. That a Geschmacksmuster qualifies as a patent for section 102(d) purposes is settled law, embraced by the Solicitor, unchallenged by Carlson, and a proposition with which we do not disagree.

Notwithstanding the holding in *Talbott* and the strong conclusion in *Monks* that the test for determining what constitutes a foreign patent should not differ between subsections (a) and (d) of section 102, Carlson invites this court to deny

Geschmacksmuster the status of patents under section 102(a).

Carlson first points to language in *Talbott* that recognizes the different situations addressed by subsections (a) and (d) of section 102 and states that the policy considerations underlying the different subsections, "while overlapping to some extent, are not necessarily identical." 443 F.2d at 1399, 170 USPQ at 282. Carlson claims to base his argument on this premise.

We do not dispute that section 102(a), relating to potential prior art in the form of patents issued in a foreign country and held by persons other than the U.S. patent applicant, serves a purpose akin to, but different from, section 102(d), which specifies the time within which the owner of a foreign patent must apply for a U.S. patent on the same invention. That distinction, however, does not suggest that a Geschmacksmuster lacks the necessary credentials to qualify as a patent under section 102(a).

Nevertheless, Carlson asserts that the correct interpretation of section 102(a) requires that a foreign patent only serve as prior art if it discloses its invention in a readily-accessible fashion. In essence, Carlson argues that the embodiment of foreign protection must take a form that fully discloses the nature of the protected design in a medium of communication capable of being widely disseminated. Because this requirement is clearly not satisfied by depositing a model in a city courthouse in a foreign land, the embodiment cannot constitute an invention patented in a foreign country for purposes of section 102(a) because it is incapable of providing detailed instruction to a large enough number of persons remote from the location of deposit. Moreover, Carlson argues, since the Bundesanzeiger entry does not explicitly refer to dual-compartment containers, it cannot provide notice of the existence of the pertinent model of the Geschmacksmuster to a designer of such containers.

■ Carlson correctly surmises that section 102(a) contains a requirement that a foreign patent be disclosed in order to qualify as prior art under section 102(a). The

requirement, however, is only that the patent be "available to the public." *In re Ekenstam*, 256 F.2d 321, 324, 325, 118 USPQ 349, 351, 353, 45 C.C.P.A. 1022 (1958) (citing *Brooks v. Norcross*, 4 F.Cas. 294, 296 (C.C.D.Mass.1851) (inventions protected by secret/"private" patents do not qualify as "patented abroad" under U.S. law)).

Because the description of the Geschmacksmuster in the Bundesanzeiger does not specifically refer to a multicompartment container, Carlson would have us deem the designs incorporated therein outside of the relevant field of prior art. His argument, however, represents an overly narrow view of the prior art germane to his invention. *See, e.g., In re Deminski*, 796 F.2d 436, 442, 230 USPQ 313, 315 (Fed.Cir. 1986) (reference must be "within the field of the inventor's endeavor," or if not, "reasonably pertinent to the particular problem with which the inventor was involved." (quoting *In re Wood*, 599 F.2d 1032, 1036, 202 USPQ 171, 174 (CCPA 1979))).

The Bundesanzeiger entry regarding the Geschmacksmuster at issue in this appeal clearly refers to a single package incorporating multiple plastic bottles, thereby alerting the public to potentially relevant designs, and directs the notified reader to proceed to Coburg to obtain the actual design. Once in Coburg, the protected design is completely "available to the public" through the certified copy of the Geschmacksmuster.

We recognize that Geschmacksmuster on display for public view in remote cities in a far-away land may create a burden of discovery for one without the time, desire, or resources to journey there in person or by agent to observe that which was registered and protected under German law. Such a burden, however, is by law imposed upon the hypothetical person of ordinary skill in the art who is charged with knowledge of all the contents of the relevant prior art. *Kimberly–Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1454, 223 USPQ 603, 614 (Fed.Cir.1984); *see also In re Hall*, 781 F.2d 897, 899–900, 228 USPQ 453, 456 (Fed.Cir.1986) (doctoral dissertation,

catalogued and available at Freiburg University, Germany, provides sufficient "public accessibility" for a printed publication under section 102(b)).

■ Moreover, actual knowledge of the Geschmacksmuster is not required for the disclosure to be considered prior art. To determine patentability, a hypothetical person is presumed to know all the pertinent prior art, whether or not the applicant is actually aware of its existence. *In re Nilssen*, 851 F.2d 1401, 1403, 7 USPQ2d 1500, 1502 (Fed.Cir.1988); *see also In re ' Howarth*, 654 F.2d 103, 106, 210 USPQ 689, 692 (CCPA 1981) ("Section 102 has as one objective that only the first inventor obtain a patent.... Foreign 'patents' and foreign 'printed publications' preclude the grant of a patent whether or not the information is commonly known. Under [section] 102 a conclusive presumption of knowledge of such prior art is, in effect, a statutorily required fiction.").

In conclusion, we hold that because the Geschmacksmuster fully discloses the design upon which German law conferred the exclusive rights attendant to the registration, the Geschmacksmuster qualifies as a foreign patent for purposes of section 102(a), and therefore constitutes prior art for use in the obviousness analysis under section 103. *In re Zimmer*, 387 F.2d 990, 991, 156 USPQ 252, 253, 55 C.C.P.A. 817 (1968). *Cf. In re Mulder*, 716 F.2d 1542, 1545, 219 USPQ 189, 193 (Fed.Cir.1983) ("[P]rinted publication ... is prior art under [section] 102(a), ..., and thus also 'prior art' under [section] 103.").

## V

■ Whether an invention would have been obvious is a conclusion of law based upon the factual underpinnings stated in *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–694, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966). Thus, this court reviews an obviousness determination by the Board *de novo*, while reviewing the factual findings underlying the obviousness determination for clear error. *In re Woodruff*, 919 F.2d 1575, 1577, 16 USPQ2d 1934, 1935 (Fed.Cir.1990).

■ Carlson argues that even if the Geschmacksmuster is considered as prior art, Des. 289,855 would nevertheless not have been obvious in light of the Geschmacksmuster, Scuito, and the Redken article. Carlson relies on the fact that the Geschmacksmuster and Scuito, the only references pertinent to the design of a dual compartment bottle, emphasize asymmetry, whereas his dual-compartment bottle design is symmetrical around a plane vertically bisecting the bottle midway between the bottle caps. Citing *In re Cho*, 813 F.2d 378, 1 USPQ2d 1662 (Fed.Cir.1987), Carlson concludes that since none of the references teach a symmetrical design for a dual compartment bottle, Des. 289,855 must have been nonobvious. We disagree.

*In re Cho*, concerned with the ornamental design of a bottle cap, contains a succinct statement of when a design patent application should be rejected under section 103:

> To support [such] a rejection ..., the teachings of references must be such as to have suggested the overall appearance of the claimed design.... Thus, if the combined teachings suggest only components of the claimed design but not its overall appearance, a rejection under section 103 is inappropriate.

*Id.* at 382, 1 USPQ2d at 1663–64 (citations omitted). This language describes the situation where each individual element of the design is disclosed in the pertinent prior art, but those elements have not been combined. In the present case, however, a person of ordinary skill in the art, or stated otherwise, "a designer of ordinary capability who designs articles of the type presented," *Id.*, at 382, 1 USPQ2d at 1663 (citing *In re Nalbandian*, 661 F.2d 1214, 1216, 211 USPQ 782, 784 (CCPA 1981)), need not necessarily study the prior art in order to understand the potential use of a symmetrical design.

In a field of art such as this, where products are deliberately designed as asymmetrical in order to create distinctive, memorable images, it would have been *obvious* to one of ordinary skill in the art to create

a "normal" or symmetrical orientation for a design. *Cf. In re Wilson,* 345 F.2d 1018, 1020, 145 USPQ 558, 559, 52 C.C.P.A. 1394 (1965) (pleasing symmetry is not nonobvious where it represents no more than obvious symmetry with convenience in mind). Indeed, knowledge of symmetry is one reason why more complex designs are developed—the *expected* design configuration is one of symmetry.

In any event, Scuito and the Geschmacksmuster manifest "the overall appearance of the claimed design," since it would have been obvious to bury the Geschmacksmuster's line of demarcation between the vessels and create the smooth, uniform surface found in Scuito. The difference in the design of a smooth-walled dual compartment container and one with a visible line of demarcation is not a difference such as would establish the nonobviousness of the design as a whole under *In re Cho.*

Because the relevant prior art renders Carlson's design obvious under section 103, the judgment of the Board is

AFFIRMED.