## In re Faizulla G. KATHAWALA.

### No. 93–1129.

United States Court of Appeals, Federal Circuit.

Nov. 9, 1993.

---

Melvyn M. Kassenoff, Sandoz Corp., of East Hanover, New Jersey, argued for appellant. With him on the brief were Robert S. Honor and Richard E. Vila.

Fred E. McKelvey, Sol., Office of Sol., of Arlington, VA, argued for appellee. With him on the brief was Teddy S. Gron. Of counsel were Albin F. Drost, Richard E. Schafer and Lee E. Barrett.

Before LOURIE and RADER, Circuit Judges, and WOODS \*, District Judge.

LOURIE, Circuit Judge.

Applicant Faizulla G. Kathawala [1] appeals from the July 17, 1992 decision of the U.S. Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences, Appeal No. 88–1921, affirming the examiner's final rejection of claims 1, 2, and 19–21 of application Serial No. 772,288, entitled "Indole Analogs of Mevalonolactone and Derivatives Thereof," as unpatentable under 35 U.S.C. § 102(d) (1988) over Greek Patent 79,042 and Spanish Patent 443,668.[2] We affirm.

---

\* Honorable George E. Woods, District Judge, Eastern District of Michigan, sitting by designation.

1. The real party in interest is Sandoz Ltd.

2. The Board initially issued a decision on April 4, 1991, in which it affirmed the examiner's rejections under § 102(d) based on both the Spanish and Greek patents. Kathawala appealed, and, in response to an unopposed motion by the Com-

missioner for consideration of additional evidence submitted by Kathawala, we remanded the case. *In re Kathawala*, No. 91–1361 (Fed.Cir. 1991). On remand, the Board affirmed the rejection based on both patents. The Board specifically addressed only the rejection based on the Greek patent, but retained its original reliance on the Spanish patent.

## BACKGROUND

Kathawala's invention relates to a group of new compounds having the ability to inhibit a key enzyme in the biosynthesis of cholesterol. Claims 1 and 2 of the application are directed to the compounds *per se*, claim 19 is directed to a pharmaceutical composition containing the compounds, and claims 20 and 21 are directed to methods of using the compounds for inhibition of cholesterol biosynthesis and treatment of atherosclerosis.

Kathawala filed the instant application on April 11, 1985, more than one year after he filed counterpart applications in Greece and Spain on November 21, 1983. Kathawala initially filed an application in the U.S. on November 22, 1982, claiming most of the same compounds as in the instant application. When he filed abroad, however, in 1983, he expanded his claims to include certain ester derivatives of the originally claimed compounds. It is claims to those esters, which Kathawala made the subject of a subsequent continuation-in-part application, the application now before us, that are at issue here.

Both foreign patents issued prior to the instant application in the U.S., the Greek patent on October 2, 1984, and the Spanish patent on January 21, 1985. The specifications of the Greek and Spanish patents are substantially the same as that of the U.S. application, both disclosing the same compounds, compositions, and methods of use. The Greek patent contains claims directed to the compounds, compositions, methods of use, and processes for making the compounds. The Spanish patent contains only "process of making" claims.

Because Kathawala filed his U.S. application claiming the esters more than one year after he filed his corresponding foreign applications, and those foreign applications issued as patents prior to the U.S. filing date, the examiner rejected the claims under 35 U.S.C. § 102(d), which precludes issuance of a patent when

> the invention was first patented or caused to be patented ... by the applicant or his legal representatives or assigns in a foreign country prior to the date of the application for patent in this country on an application for patent ... filed more than twelve months before the filing of the application in the United States.

35 U.S.C. § 102(d). The examiner rejected each of the claims over the Greek patent, and claims 1 and 2, the compound claims, over the Spanish patent.

Kathawala appealed to the Board, arguing with respect to the rejection over the Greek patent that his invention was not "patented" in Greece under section 102(d) because the compound, composition, and method of use claims in the Greek patent were invalid under Greek law as directed to non-statutory subject matter. Kathawala also argued that the examiner's rejection based on the Spanish patent was erroneous because, although that patent issued and was enforceable prior to the U.S. filing date, the specification was not publicly available until August 1, 1985, the date on which the notice of the Spanish patent grant was officially published, which was after the U.S. filing date. Thus, Kathawala argues, the compositions were not "patented" for purposes of section 102(d). Kathawala further argued that the "invention ... patented" in Spain was not the same "invention" claimed in the U.S. application because the Spanish patent claimed processes for making the compounds, and claims 1 and 2 were directed to the compounds themselves.

The Board affirmed the examiner's rejections over both foreign patents. With regard to the Greek patent, the Board concluded that the validity of the Greek claims was irrelevant for purposes of section 102(d), the controlling fact being that the Greek patent issued containing claims directed to the same invention as the U.S. application. With regard to the Spanish patent, the Board concluded that Kathawala's invention was "patented" when the patent was granted and Kathawala's rights became fixed. The Board also concluded that the "invention ... patented" in Spain was the same "invention" claimed in the U.S. application. Kathawala appealed.

## DISCUSSION

The issue before us thus is whether the Board properly determined that the Greek

and Spanish patents bar issuance of Kathawala's U.S. application under section 102(d). We must interpret the phrase "invention ... patented" under § 102(d) and determine whether Kathawala's "invention" was first "patented" in Greece and in Spain within the meaning of that provision.

■ Statutory interpretation is a question of law which we review *de novo*. *In re Carlson*, 983 F.2d 1032, 1035, 25 USPQ2d 1207, 1209 (Fed.Cir.1992) (citations omitted). Turning first to the Greek patent, there is no dispute that it contains claims directed to the same invention as that of Kathawala's U.S. application. Kathawala argues, however, that his invention was not first "patented" in Greece under section 102(d) because the compound, composition, and method of use claims are invalid under Greek patent law as directed to non-statutory subject matter. According to Kathawala, only his process claims are valid under Greek law. Kathawala thus argues that the validity of his claims under Greek patent law determines whether his invention was "patented" in Greece within the meaning of section 102(d) prior to his U.S. filing date.

■ We disagree. Even assuming that Kathawala's compound, composition, and method of use claims are not enforceable in Greece, a matter on which we will not speculate, the controlling fact for purposes of section 102(d) is that the Greek patent issued containing claims directed to the same invention as that of the U.S. application. When a foreign patent issues with claims directed to the same invention as the U.S. application, the invention is "patented" within the meaning of section 102(d); validity of the foreign claims is irrelevant to the section 102(d) inquiry. This is true irrespective of whether the applicant asserts that the claims in the foreign patent are invalid on grounds of non-statutory subject matter or more conventional patentability reasons such as prior art or inadequate disclosure.

Kathawala does not dispute that the Greek patent issued containing claims directed to the same invention as that of his U.S. application. Kathawala sought and obtained the claims contained in the Greek patent and cannot now avoid the § 102(d) bar by arguing that that which he chose to patent abroad should not have been allowed by the foreign patent office. Acceptance of such a position, as the Board stated, would place an " 'unrealistic burden' on the courts and PTO to resolve 'esoteric legal questions which may arise under the patent laws of numerous foreign countries[.']" Slip op. at 21. The PTO should be able to accept at face value the grant of the Greek patent claiming subject matter corresponding to that claimed in a U.S. application, without engaging in an extensive exploration of fine points of foreign law. The claims appear in the Greek patent because the applicant put them there. He cannot claim exemption from the consequences of his own actions. The Board thus correctly concluded that the validity of the Greek claims is irrelevant for purposes of section 102(d). Accordingly, the Board properly affirmed the examiner's rejection over the Greek patent.

■ Also before us is the rejection of claims 1 and 2, the compound claims, based on the Spanish patent. Kathawala argues that this rejection was erroneous for two reasons. First, Kathawala asserts that although the Spanish patent was granted and enforceable prior to the U.S. filing date, it was not published until after that date. Kathawala thus argues that his invention was not "patented" in Spain until the publication date of the Spanish patent. Second, Kathawala argues that the "invention" of claims 1 and 2, the compounds themselves, is not the same "invention ... patented" in Spain under section 102(d), that compositions are a separate invention from processes.

We reject both arguments of Kathawala. With regard to the first argument, Kathawala concedes that the Spanish patent issued and was enforceable on January 21, 1985, a date prior to the U.S. filing date. Kathawala nevertheless asserts that the effective date of a foreign patent for purposes of § 102(d), the date on which an invention is "patented," is not the date the foreign patent issues and becomes enforceable, but the date on which it becomes publicly available.

The law on this issue was well established by our predecessor court in *In re Monks*, 588

F.2d 308, 200 USPQ 129 (CCPA 1978), and *In re Talbott*, 443 F.2d 1397, 170 USPQ 281 (CCPA 1971). In *Monks*, the court considered the date on which an invention was "patented" in Great Britain under § 102(d), and inquired whether the effective date for purposes of that section was the date on which the complete specification was published, a date prior to the U.S. filing date, or the date on which the patent was "sealed" under British law, which occurred after the U.S. filing date. After reviewing the legislative history of section 102(d), the court concluded that "patented" means "a formal bestowal of patent rights from the sovereign to the applicant such as that which occurs when a British patent is sealed." 588 F.2d at 310, 200 USPQ at 131. It was on the "sealed" date that the patentee's rights became fixed and settled and the rights of the patent accrued, not the later publication date. The court thus reversed the examiner's rejection, since the applicant's British patent was not sealed and hence "patented" until after his U.S. filing date.

In *Talbott* the court held that a foreign patent need not be publicly available to be "patented" under section 102(d). The court rejected the applicant's argument that the statutory bar did not apply because he had kept his German patent secret until after his U.S. filing date. 443 F.2d 1397, 170 USPQ 281. *See also Duplan Corp. v. Deering Milliken Research Corp.*, 487 F.2d 459, 179 USPQ 449 (4th Cir.1973), *cert. denied*, 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974) (An invention is "patented" in France under section 102(d) on its "délivré" date, the date on which the inventor's exclusive rights formally accrue, not on the later publication date when the patent is made publicly available.).

The import of the decisions in *Monks* and *Talbott* is that, contrary to Kathawala's argument, it is irrelevant under section 102(d) whether the Spanish patent was publicly available prior to the U.S. filing date. Rather, the Board correctly concluded that an invention is "patented" in a foreign country under section 102(d) when the patentee's rights under the patent become fixed. *See* Marina V. Schneller, *Patenting and Filing*

*Abroad as a Bar to U.S. Patent Grant—History, Purpose and Sanctions of 35 U.S.C. § 102(d)*, 11 Int'l Rev.Indus.Prop. & Copyright L. 324, 345 (1980) ("[T]he date upon which the foreign patent is 'patented,' within the meaning of 35 U.S.C. § 102(d), is the date upon which the rights to enforce the foreign patent first accrue to the U.S. applicant ... [and] the publication date of the foreign patent is irrelevant...."). In the instant case, Kathawala stipulated that the Spanish patent was enforceable on January 21, 1985, the date the patent was granted and a date prior to the U.S. filing date. Hence, the Board correctly concluded that Kathawala's invention was "patented" in Spain prior to his U.S. filing date.

■ Kathawala's second argument is that the "invention" patented in Spain is not the same "invention" claimed in claims 1 and 2. Kathawala argues that each claim defines a separate invention, and since the Spanish claims are directed to processes for making the subject compounds, and claims 1 and 2 of the instant application are directed to the compounds themselves, the "invention" patented in Spain is not the same "invention" as that of claims 1 and 2. Hence Kathawala urges that the rejection of claims 1 and 2 under section 102(d) based on the Spanish patent was erroneous.

We do not agree. It is a truism that a claim defines an invention, and a claim to a composition is indeed different from a claim to a process. However, we cannot let rigid definitions be used in situations to which they don't apply to produce absurd results. The word "invention" in the Patent Act has many meanings depending on the context. *See* Paul M. Janicke, *The Varied Meanings of "Invention" in Patent Practice: Different Meanings in Different Situations, in Patent Law Perspectives* App.–1 (Donald R. Dunner et al. eds., 1970). In the present context, it must have a meaning consistent with the policy and purpose behind section 102(d), which is to require applicants for patent in the United States to exercise reasonable promptness in filing their applications after they have filed and obtained foreign patents. *See* Donald S. Chisum, *Patents* § 6.04[1] (1993).

Kathawala made an "invention" relating to a group of new compounds. He filed applications in Greece and Spain disclosing his invention as consisting of four different aspects: compounds, compositions, methods of use, and processes of making the compounds.[3] While Kathawala had the potential to claim each of those aspects, and did so in his Greek application, he chose to claim only the processes in Spain because, he asserts, pharmaceutical compositions and methods of use were not patentable under Spanish patent law during the relevant time period.

Kathawala's understandable decision not to claim the compounds in Spain, however, does not permit him to evade the statutory bar by arguing that the Spanish Patent Office would not have allowed such claims. Similarly, neither would it have mattered if Kathawala had applied for compound claims and the Spanish Patent Office had rejected them. What is controlling is that the application that Kathawala filed in Spain disclosed and provided the opportunity to claim all aspects of his invention, including the compounds.

It would be contrary to the policy of the statute to permit an applicant to file a foreign application on an invention that may be claimed by four related types of claims, obtain a grant of whatever patent rights were available in the foreign country, and then file an application in the United States, after the foreign patent has issued and more than one year after the foreign filing date on the same invention, with claims directed to those aspects of the invention which were unpatentable in the foreign country. That would permit grant of a U.S. patent on what is essentially the same "invention" as that patented in the foreign country and would frustrate the policy underlying section 102(d), which is to encourage the filing of applications in the United States within a year of the foreign filing of a counterpart patent application. An applicant cannot evade the statutory bar by citing alleged defects of foreign law concerning scope of patentable subject matter.

▮ We thus hold that when an applicant files a foreign application fully disclosing his invention and having the potential to claim his invention in a number of different ways, the reference in section 102(d) to "invention ... patented" necessarily includes all disclosed aspects of the invention.[4] Thus, the section 102(d) bar applies regardless whether the foreign patent contains claims to less than all aspects of the invention.

While we appreciate Kathawala's assertion that he didn't realize that the foreign patents had issued claiming the esters until the critical date had passed, and that he unintentionally failed to file in this country within the statutory time period, we must conclude that Kathawala had his chance to file his application in this country and failed to do so in time to avoid the statutory bar. The Board thus properly affirmed the examiner's rejection of claims 1 and 2 under § 102(d) based on the Spanish patent.

### CONCLUSION

Because Kathawala filed Greek and Spanish applications on his "invention" more than one year before he filed an application on the same invention in the United States, and the foreign applications issued as patents prior to his U.S. filing date, Kathawala is barred under 35 U.S.C. § 102(d) from obtaining a U.S. patent. Accordingly, the decision of the Board is affirmed.

***AFFIRMED.***

3. Similarly, in *In re Pleuddemann*, 910 F.2d 823, 15 USPQ2d 1738 (Fed.Cir.1990), we recognized that in the context of an obviousness determination under 35 U.S.C. § 103 that

[w]hen a new and useful compound or group of compounds is invented or discovered having a particular use it is often the case that what is really a single invention may be viewed legally as having three or more different aspects permitting it to be claimed in different ways, for example: (1) the compounds themselves; (2) the method or process of making the compounds; and (3) the method or process of using the compounds for their intended purpose.

*Id.* at 825–26, 15 USPQ2d at 1740 (emphases omitted).

4. This holding concerning the meaning of section 102(d) of course is not intended to convey any implication concerning infringement.