NEWMAN, Circuit Judge,
concurring in part, dissenting in part.
I join the court’s affirmance of the district court’s judgment on the issues of validity and inequitable conduct. However, I would also affirm the court’s judgment on the issue of infringement, for reversible error has not been shown in the district court’s claim construction, and the jury’s verdict is supported by substantial evidence.
The claim clause at issue is a means-plus-function clause, presented in both U.S. Patent Nos. 5,125,904 and 5,312,355, claim 1 of both patents starting with the same clauses, as follows:
1. A sheath assembly for use with a lead or catheter comprising: an introducer sheath;
a hemostatic valve coupled to said introducer sheath, said hemostatic valve and introducer sheath being arranged and configured to permit introduction of at least one lead or catheter therethrough;
means for permitting removal of said hemostatic valve and introducer sheath from said lead or catheter disposed therethrough without requiring said introducer sheath and hemostatic valve to be removed from an end of said lead or catheter, ...
The magistrate judge construed the “means for permitting removal” as a “score line,” which is the primary structure shown in the specification, and adopted the dictionary definition of “score” as “ ‘any scratch, line, or groove’ that is formed in the scoring process,” from the Academic Press: Dictionary of Science and Technology (1992).
After presentation of the plaintiffs case in chief, the district court further con *1322 strued the means-plus-function clause in view of the debate that became manifest in the examination and cross-examination of the witnesses, for, as the district court observed, it was “fairly obvious it’s something that, in fact, does need to be defined because defendants are pushing on it. And I would gather defendants agree with that analysis. Is that correct?” Counsel for the defendant, Enpath, responded: “Yes, your Honor.” A3769. My colleagues on this panel confirm that this additional claim construction by the judge was appropriate. Claim construction is a matter of law, and it is essential that the jury be correctly instructed on the law, lest the entire trial be tainted. See 02 Micro Int’l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360, 1362 (Fed. Cir.2008) (“When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve the dispute.... [I]t is the court’s duty to resolve it.”). This procedure is not unusual. As this court explained in Pfizer, Inc. v. Teva Pharmaceuticals, USA Inc., 429 F.3d 1364, 1377 (Fed.Cir.2005), “district courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.”
As provided by statute, means-plus-function claim terms are construed in light of the structures described in the specification and equivalents thereof:
§ 112 ¶ 6. An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.
The district court construed the “means for permitting removal” clause with reference to the patents’ specifications and the prior art cited in the specifications. The patents state that “the prior art has devised a number of splittable or peel away sheaths. The sheath is scored so that it is withdrawn by splitting or peeling it off from the pacemaker catheter.” '904 patent col.l 11.41-44; '335 patent col.l 11.45-48. The patents also state that the way the splittable structure is implemented or the peel-away feature is realized is not critical to the invention:
[T]he detailed nature by which such splittable structure is implemented or how [the] peel-away feature is realized is not critical to the invention. Any method now known or later devised by which such sheaths 12 and valve assemblies 14 may be split or separated may be employed and are contemplated as being within the scope of the invention.
'904 patent col.5 11.59-66; '355 patent col.7 11.37-44. Both the '904 and the '355 patents cite prior publications showing various separation methods, as included in the court’s claim construction. Referring to this information and the testimony at trial, the district court construed the “means for permitting removal [of the valve and sheath]” as a “linear perforation, slit, slot, tab, line, severing, weakening, or tear that can be partial or complete.” This elaborated claim construction was presented, quoting the majority opinion, “to avoid any jury confusion about the meaning of ‘score line.’ ” Maj. Op. at 1314. My colleagues assign no error to this procedure.
The references were incorporated to show the prior art, not to define what was new. The splitting and separation of the sheath was not what was new; what was new was the combination with removal of *1323 the hemostatic valve. Thus for the splitting of the plastic, the cited references showed various ways in which that had been done in the past, and the patents stated that “any method now known or later devised by which such sheaths 12 and valve assemblies 14 may be split or separated may be employed and are contemplated as being within the scope of the invention.” '904 patent eol.5 11.62-66; '355 patent col.711.41-44.
My colleagues rule that the district court should have ignored these cited references, and should not have recognized their content, or even their titles, in construing the “means” portion of the claim. Although this objection was not raised to the district court, my colleagues now deem it to be reversible error to have considered the references, which include Littleford, “Split Sleeve Introducers for Pacemaker Electrodes and the Like,” U.S. Pat. No. 4,243,050 (1981); Osborne, “Tear Apart Cannula,” U.S. Pat. No. RE 31,955 (1985); Boarini et ah, “Peelable Catheter with Seeming Ring and Suture Sleeve,” U.S. Pat. No. 4,411,654 (1983); and Moorehead, “Medical Layered Peel Away Sheath and Methods,” U.S. Pat. No. 4,983,168 (1991).
It cannot be error for the district court to have recognized that splittable sheaths were well known, and to have construed the “means for permitting removal” clause in light of this knowledge. The only error that my colleagues ascribe to the district court’s claim construction is that the court included equivalent structure from the pri- or art set forth in the specifications and brought out in the testimony of witnesses, instead of relying solely on a dictionary definition. No flaw has been ascribed to the district court’s action to explain to the jury what is included in the “means for permitting removal” clause, for this construction of law was the responsibility of the judge, not the jury.
The majority opinion states that Atmel Corp. v. Information Storage Devices, Inc., 198 F.3d 1374, 1381 (Fed.Cir.1999) prohibits a patentee from relying on an “incorporated” reference to describe a corresponding structure under § 112, ¶ 6. That is an incorrect generalization. In Atmel, the flaw was that no structure at all was described to perform the claimed function apart from the incorporated reference, and that this description could not come solely from the incorporated reference. See id. at 1382 (“Fulfillment of the § 112, ¶ 6 tradeoff cannot be satisfied when there is a total omission of structure. There must be structure in the specification.”). However, that is far removed from the situation here. The '904 and '355 patents fully describe structures that perform the claimed function of removal of the valve and sheath, describing splittable sheaths of various forms, and explaining that there are many known ways of splitting or peeling plastic.
No blanket rule prohibits reliance on prior art for known information. Precedent is contrary. See Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1329 (Fed.Cir.2001) (“When a document is ‘incorporated by reference’ into a host document, such as a patent, the referenced document becomes effectively part of the host document as if it were explicitly contained therein.”). This expedient is not without logical limitations, but incorporated material is viewed as it would be treated by a person experienced in the field of the invention. See Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1477 (Fed.Cir.1998) (“It is the person of ordinary skill in the field of the invention through whose eyes the claims are con *1324 strued.”). Information is incorporated by reference into patent specifications for various purposes, and known information may usefully be incorporated by reference, to illustrate known structures that are known alternatives or equivalents to those in the specification. This enables patents to remain concise statements of what is new, not cumbersome repetitions of what is already known and readily provided by reference. In re Howarth, 654 F.2d 103, 106 (CCPA 1981) (“[A]n applicant may, in the interests of economy of time and space, incorporate certain types of documents by specific reference in his application to such source materials.”); see Webster Loom Co. v. Higgins, 105 U.S. (15 Otto.) 580, 586, 26 L.Ed. 1177 (1881) (“[A patentee] may begin at the point where his invention begins, and describe what he has made that is new and what it replaces of the old. That which is common and well known is as if it were written out in the patent and delineated in the drawings.”).
My colleagues assign no error to the technologic content of the district court’s claim construction, no unfairness to the procedure, and no absence of support for the jury verdict. Enpath does not argue that its devices’ means for removing the sheath and valve are non-infringing, and does not argue that the jury verdict is not supported by substantial evidence. The record states that Enpath told the Food and Drug Administration that its device has “a scored/splittable introducer sheath.” The record also contains evidence that the Enpath manufacturing process creates a slit at the proximal end of the sheath. There is no basis for suspecting that substantial evidence does not support the jury verdict, whether on the magistrate judge’s initial claim construction, or on the district court’s elaborated claim construction.
Enpath has not argued that there was not substantial evidence of infringement on the magistrate judge’s definition of “score” as a “ ‘scratch, line or groove’ that is formed by the scoring process.” Indeed, one wonders why a general definition in a dictionary is preferable to the definitions in specific technological references in the specification. While this court in Phillips v. AWH Corp., 415 F.3d 1303 (Fed.Cir. 2005) (en banc), recognized that dictionaries can be useful in explaining terms to judges who are unfamiliar with technical terminology, dictionaries are not superior to clear definitions in technological references on the same subject matter.[1]
Enpath now challenges the propriety of the district court’s reworking the claim construction during the trial, although at the time Enpath encouraged the court to do so. Enpath states that it was prejudiced because it prepared for trial based on the magistrate judge’s claim construction, but Enpath does not state that it requested and was denied additional time to adjust its defense. See Newell Companies, Inc. v. Kenney Mfg. Co., 864 F.2d 757, 765 (Fed.Cir.1988) (“Trials must be fair, not perfect.”); Devices for Medicine, Inc. v. Boehl, 822 F.2d 1062, 1066 (Fed.Cir. 1987) (same). This attack on the district court’s procedure is as unwarranted as it is tardy.
I would affirm the district court’s claim construction, for it conforms to the specification, the prosecution history, and the evidence at trial. The district court con *1325 strued the claims to include the structure set forth in the specification and equivalents thereof, drawing on the subject matter incorporated by reference in the specification, and on the evidence at trial. Neither procedural flaw, nor harmful error, has been shown. Respectfully, I dissent.

. This ruling negating reliance on information incorporated by reference can have far-reaching consequences, in prohibiting reliance on incorporated published material, thereby requiring the applicant to reproduce possibly large amounts of published text, even if only to show variants known in the prior art, as here.